366 So.2d 990 (1978)
C-B CONSTRUCTION COMPANY, INC.
v.
George T. KILPATRICK.
No. 12374.
Court of Appeal of Louisiana, First Circuit.
December 27, 1978.
Rehearing Denied February 12, 1979.
*991 Robert W. Scheffy, Jr., Hopkins P. Breazeale, Jr., Baton Rouge, of counsel for plaintiff-appellant C-B Construction Co., Inc.
Robert G. Dawkins, Michael S. Coyle, Ruston, of counsel for defendant-appellee George T. Kilpatrick.
Paul H. Spaht, Baton Rouge, of counsel for third party defendant-appellee Ralph Kiper.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
ELLIS, Judge:
This suit was originally brought by C-B Construction Company, Inc. against George T. Kilpatrick, seeking the balance due on a building contract, interest due on late payments on the contract, and other damages due because of erroneous and incomplete plans. Defendant answered, denying liability, and reconvened for rent lost, and, alternatively, interest paid, because of late completion of the job, and for an amount sufficient to resurface the parking lot, which was alleged to have been improperly constructed. Defendant also third partied Reliance Insurance Company, plaintiff's bonding company, seeking attorney's fees due under the building contract. Defendant subsequently filed an amended pleading, making Ralph Kiper, the architect who designed the building and parking lot, and who supervised the job, a third party defendant.
After trial on the merits, judgment was rendered in favor of plaintiff on its main demand for the balance due on the contract and for interest for late payments; and in favor of defendant for the cost of rebuilding the parking lot. All other demands were dismissed including those against Mr. Kiper. From the judgment, plaintiff has appealed, complaining on several grounds of the finding that the parking lot was not properly constructed. Defendant has answered the appeal assigning as error the award of interest on late payments to plaintiff, and the failure of the court to award him interest paid because of late completion of the job.
It is plaintiff's position that it constructed the parking lot in strict compliance with the plans and specifications, and should not be held liable for a subsequent deterioration of the lot. It claims the benefit of R.S. 9:2771 and argues that the court failed to give effect to the unconditional acceptance filed by the defendant at the completion of construction.
*992 According to plaintiff's witnesses, tests were run on the sub-base and base of the parking lot at each stage of its construction by Shilstone Testing Laboratories. The purpose of the tests was to ascertain if the sub-base and base had been adequately prepared and compacted. Work could not proceed on the parking lot until each step in the construction process was tested and approved.
When the final asphalt surface was applied, there were a number of faults, which were repaired by plaintiff to the satisfaction of Shilstone and Mr. Kiper. The final acceptance of the job was executed by Mr. Kilpatrick thereafter.
Within about four months of the acceptance, additional faults began to appear in the parking lot, including pot holes, "bird baths" or sunken areas, and areas in which the asphalt deteriorated. These faults were apparently so extensive that it would have been more expensive to repair each defect than to replace the defective area of the parking lot.
Plaintiff argues that, since its work was done according to specifications, and was tested and found satisfactory at each step of construction, the fault must have been in the design. R.S. 9:2771 provides:
"No contractor shall be liable for destruction or deterioration of or defects in any work constructed, or under construction, by him if he constructed, or is constructing, the work according to plans or specifications furnished to him which he did not make or cause to be made and if the destruction, deterioration or defect was due to any fault or insufficiency of the plans or specifications. This provision shall apply regardless of whether the destruction, deterioration or defect occurs or becomes evident prior to or after delivery of the work to the owner or prior to or after acceptance of the work by the owner. The provisions of this Section shall not be subject to waiver by the contractor."
Plaintiff takes the position that, under the facts as above outlined, and the foregoing statute, it cannot be held liable for the deterioration of the parking lot after it had been completed and accepted.
However, defendant's expert witnesses testified that there was nothing wrong with the plans and specifications prepared by Mr. Kiper. They were of the opinion that the deterioration of the parking lot could only be the result of improper preparation of the sub-base, regardless of the tests conducted by Shilstone.
The trial judge was impressed by, and adopted the testimony of defendant's experts in reaching his conclusion relative to the parking lot. This is a matter involving the credibility of witnesses and determinations of fact. There is evidence in the record from which one might reasonably conclude that the testimony of the defendant's expert witnesses is correct. We therefore find no manifest error in the conclusion of the trial judge in this respect.
Plaintiff also argues that the defendant accepted the job unconditionally, knowing that there were problems with the parking lot, and cannot now complain of those problems, citing Maloney v. Oak Builders, Inc., 224 So.2d 161 (La.App. 4th Cir. 1969), modified, Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (1970).
The record shows that the defects in the parking lot complained of herein developed after the acceptance, and were not readily discoverable at that time. The contention is therefore without merit.
Defendant's first specification of error is to the ruling of the trial court that interest was owed by him under the terms of the building contract for making late payments of the amounts due monthly thereunder.
It is claimed that plaintiff did not follow the procedures for requesting payment set forth in the contract, and that defendant should not be liable for late payments under those circumstances.
The trial judge held that, although the procedures followed by C-B in requesting the monthly payments were not strictly in accordance with the terms of the contract, Mr. Kilpatrick had acquiesced in the *993 method used, as had his architect, and could not now urge the irregularity as a defense. We agree.
Mr. Kilpatrick also alleges that plaintiff failed in its burden of proving the amount of interest due. Plaintiff introduced into evidence a statement showing the number of days each payment was late, which stands unrebutted in the record. This document, together with the other evidence on the point is sufficient proof of the amount. There are some technical errors, arising out of the application of a seven percent rate of interest prior to July 28, 1970, when a five percent rate was in effect; and the use of 35 days instead of 25 days in computing the interest due between January 10th and February 4, 1971. This results in a net reduction of $147.43 in the amount due plaintiff, or a total of $3,333.81.
The final specification of error is to the failure of the trial court to award defendant the amount of interest it was forced to pay under its interim financing because of plaintiff's failure to complete the job timely. The job was scheduled to be completed by December 10, 1970. The job was substantially completed on May 24, 1971, and was occupied by defendant's lessee on that date. The formal acceptance was filed on June 7, 1971.
Plaintiff testified that it lost 41 working days on the job due to a strike, and over 200 days because of rain. However, it did not request an extension of the completion date for these reasons until April or May, 1971. This request was not granted by defendant.
The trial judge found that, although the request for extension was not properly made, Mr. Kiper was aware of the delays, and it would be inequitable to tax plaintiff with the interest under those circumstances.
Plaintiff's failure to finish the job in the time provided for in the contract is a passive breach thereof. Ordinarily, damages for a passive breach of contract are due only from the time that the debtor has been put in default. Articles 1931, 1933, Civil Code. However, Article 1933 further provides the exception that: "When the thing to be given or done by the contract was of such a nature, that it could only be given or done within a certain time, which has elapsed, or under certain circumstances, which no longer exist, the debtor need not be put in legal delay to entitle the creditor to damages."
This provision has been interpreted to mean that, when time is of the essence in a contract, there is no need to put the debtor in default. Williams Lumber Co. v. Stewart Gast & Bro., 21 So.2d 773 (La.App. Orl. 1945).
In this case, the contract itself provides that time is of the essence. In addition, the lease which Mr. Kilpatrick had with the telephone company was subject to cancellation if the job was not timely completed. We recognize the fact that Mr. Kilpatrick was able to obtain extensions of his contract with the telephone company, but we do not believe that this changes the importance of time to the building contract. We therefore hold that there was no necessity for defendant to put plaintiff in default.
It is undisputed that plaintiff failed to request extensions of time on the contract as the delays occurred. It waited until after the job was completed, which is contrary to the provisions of the building contract. Plaintiff is entitled only to such delays as it properly requested under the contract. We find that the timely notification that time was being lost because of a labor problem, and that an extension might be requested for that reason, is a sufficient compliance with the contract. Plaintiff therefore is entitled to a 41-day extension for that reason. No such notice or request was made for the delays allegedly caused by rain, and plaintiff is not entitled to an extension for that reason.
The 41-day extension puts the last day for completion at January 20, 1971. Interest due on the loan from Louisiana National Bank from January 21, 1971, through February 26, 1971, would total $2,970.07 and from February 27, 1971, through April 7, 1971, equals $3,728.25, for a total of *994 $6,698.32. Interest on a loan from Capital Building and Loan Association from March 17, 1971, through June 10, 1971, equals $4,681.80. Total interim interest paid during the above periods totals $11,380.12, for which defendant is entitled to judgment.
The judgment appealed from is therefore affirmed in part, reversed in part and amended in part, so as to reduce the amount of interest for late payments awarded to plaintiff from $3,396.77 to $3,333.81; and to award to defendant the additional sum of $11,380.12, together with legal interest from date of judicial demand until paid. In all other respects, the judgment is affirmed. All costs of this appeal shall be paid by plaintiff.
AFFIRMED IN PART, REVERSED IN PART, AMENDED IN PART AND RENDERED.