593 So.2d 1261 (1991)
UTLEY-JAMES OF LOUISIANA, INC. and Casualty and Surety Company
v.
STATE of Louisiana, DIVISION OF ADMINISTRATION, DEPARTMENT OF FACILITY PLANNING AND CONTROL.
No. CA 90 2147.
Court of Appeal of Louisiana, First Circuit.
September 11, 1991.
Rehearing Denied January 3, 1992.
Writ Denied May 1, 1992.
*1262 Murphy J. Foster, III, Baton Rouge, for plaintiff-appellant Utley-James of Louisiana, Inc.
J. Ashley Moore, Harry J. Phillips, Jr., Baton Rouge, for petitioner-in-intervention Teachers Retirement System of Louisiana and Louisiana State Employees Retirement System.
Michael L. Hebert, Baton Rouge, for defendant-appellee State, Div. of Admin.
Before SAVOIE, CRAIN and FOIL, JJ.
CRAIN, Judge.

FACTS
In August, 1984, Utley-James of Louisiana, Inc. hereinafter (Utley-James) entered into a contract with the State Facility Planning and Control, (hereinafter, the "State") to construct a building in Baton Rouge, for the Teachers' Retirement System of Louisiana and the Louisiana State Employees' Retirement System (hereinafter referred to as the "Retirement Systems"). The contract price was six million eight hundred eighty-six thousand dollars ($6,886,000,00).
In October, 1985, it was discovered that some of the footing columns had settled. Facility Planning employed Soil Testing Engineers, Inc. to make a soil investigation of the soil adjacent to the column that had settled the most, column D-4. Utley-James employed Eustis Engineering to do the same. On March 6, 1986, Gore Engineering, Inc., performed a third subsoil investigation at the request of Facility Planning and Utley-James. On April 7 and 8, 1986 column D-4 was excavated to determine the cause of the settlement. Column D-4 had a footing diameter of eight feet (8') rather than nine feet six inches (9'6") as specified in the construction plans. Columns B-4, C-5 and D-5 showed settlement similar to column D-4. Utley-James and Facility Planning entered into negotiations to determine the remedy for the settled footings.
As a result of these negotiations Utley-James signed a change order on May 30, 1986. The change order states:
 CHANGE ORDER
 CHANGE ORDER NO: FOUR (4)
 DATE: May 30, 1986
 CONTRACT DATE: August 16, 1984
PROJECT NAME Office Building for the Louisiana
 AND NUMBER: State Retirement Systems
 Baton Rouge, Louisiana
 Project No. 01-07-00-79-40
CONTRACTOR: Utley-James of Louisiana, Inc.
 2644 South Sherwood Forest Blvd.
 Baton Rouge, Louisiana 70816
You are directed to make the following change in this contract:
1. The Contractor shall bear all costs for the new corrective footing constructed under Column D-4.
2. The Contractor shall construct a new corrective footing under Column C-4 similar to the corrective footing under Column D-4 except that the footing shall bear in competent material described as "stiff to very stiff tan and light gray clay" which is expected to be encountered at a depth of about 8 to 10 feet below the first floor slab. The bearing material governs the required depth and shall be approved by Soil Testing Engineers, Inc. in the field at the time the excavation is made. The Contractor shall bear all costs for the construction costs for the construction of this new footing.
*1263 3. The Contractor shall reimburse the Owner $26,996.15 which represents the total costs of investigation, inspection and testing (including the Architect's additional services) that have been incurred by the Owner since October 24, 1985 in connection with the settlement of Footings B-4, C-4, D-4, C-5, and D-5. See attached breakdown.
4. The Contractor shall bear all costs of any damages, delays and/or other additional costs that may have been incurred by the Contractor since October 24, 1985 and/or that may be incurred by the Contractor in the future in connection with the settlement of Footings B-4, C-4, D-4, C-5, and D-5.

Original Contract Sum $6,886,000.00
Net Change by previous Change Orders $ 1,755.00
Contract Sum prior to this Change Order $6,887,755.00
Contract Sum will be decreased by this Change Order $ 26,996.15
New Contract Sum including this Change Order $6,860,758.85
Contract Time will be unchanged by this Change Order -0- days
Revised Contract Completion Date September 24, 1986
 RECOMMENDED ACCEPTED APPROVED
Aguilar & Assoc. and Utley-James of Facility Planning and
Brocato-Bentin, Archs. Louisiana, Inc. Control
 (Designer) (Contractor) (Owner)
2600 Government Street 2644 South Sherwood State of Louisiana
Baton Rouge, La. 70806 Forest Boulevard Division of
 Baton Rouge, La. 70816 Administration
By: Edward Bentin By: Carlos Guerreo By: Julius Burch
 ________________ ________________ _____________
DATE: 5-30-86 DATE: 6/2/86 DATE: 6/5/86
 ________________ _______________ _____________
FILE 7914-CO4.1

The construction of the building was not completed by the date agreed upon in the contract. The contract provided for liquidated delay damages of one thousand eight hundred dollars ($1800.00) per day delay costs for each day the construction exceeded the contract completion date. Two hundred seventy-three thousand, six hundred dollars (273,600.00) was withheld as delay damages by the State from the amount owed Utley-James under the contract.
On July 24, 1987, Utley-James filed suit to recover the sums withheld by the State and for damages for delays that were allegedly the fault of the State. Aetna Casualty and Surety joined Utley-James as a plaintiff in this action. On December 8, 1989, the State filed peremptory exceptions of non-joinder of an indispensable party and improper party defendant alleging that the Retirement Systems were the proper defendants. Commissioner Bates denied the exceptions finding that although the Retirement Systems and State are listed as owners on the cash sale and the Retirement Systems issued the checks in payment of construction costs, a complete and equitable adjudication of the issue could be made in their absence. The Retirement Systems petitioned to intervene in the proceedings. The State requested summary judgment dismissing the lawsuit based on change order number four. The Retirement Systems were granted leave to intervene. Prior to a decision on the summary judgment request, the State and Retirement Systems jointly filed a peremptory exception of res judicata based on change order number four. The request for summary judgment was denied prior to the hearing on the peremptory exception. The peremptory exception of res judicata was granted by Commissioner Bates. Utley-James requested a de novo review by the trial court. Judge Higginbotham reviewed *1264 the record and concurred with the commissioner's written reasons for judgment and granted the exception of res judicata. Utley-James and Aetna appeal this decision.
The issues for review are whether La. R.S. 38:2216(H) should have retroactive application thus nullifying change order number four; whether change order number four is a valid compromise agreement; and whether the State could withhold damages without putting Utley-James in default.

APPLICATION OF LA.R.S. 38:2216(H)
La.R.S. 38:2216(H), enacted by Act 304 of 1990, states:
Any provision contained in a public contract which purports to waive, release or extinguish the rights of a contractor to recover cost of damages, or obtain equitable adjustment, for delays in performing such contract, if such delay is caused in whole, or in part, by acts or ommissions within the control of the contracting public entity or persons acting on behalf thereof, is against public policy and is void or unenforceable. When a contract contains a provision which is void and unenforceable under this Subsection, that provision shall be severed from the other provisions of the contract and the fact that the provision is void and unenforceable shall not affect the other provisions of the contract.
Art. 1 Sec. 23 of the Louisiana Constitution of 1974 states:
No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted.
La.C.C. art. 6 states:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretive laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
The comments to La.C.C. art. 6 provide:
(b) According to a well settled rule of statutory interpretation, a substantive law applies prospectively only, unless it expressly or impliedly provides that it be applied both prospectively and retroactively. Of course, retroactive application of substantive laws is possible only to the extent that it is constitutionally permissible.
(c) According to a well settled rule of statutory interpretation, procedural and interpretative laws apply both prospectively and retroactively unless they violate vested rights or obligations of contracts. See Ardoin v. Hartford Acc. & Indemn. Co., 360 So.2d 1331 (La.1978); Barron v. State Dept. of Public Safety, 397 So.2d 29 (La.App.2d Cir.1981).
(d) Article 6 makes no reference to so-called remedial legislation because of the multiplicity of meanings assigned to it. A remedial law may be procedural, interpretive, or substantive. A procedural law is remedial in the sense of dealing with the remedy rather than dealing with the right itself. An interpretive law is remedial in the sense of remedying an error or ambiguity in the prior law. In both situations the new law may, in principle, apply retroactively even in the absence of express language to that effect. However, a substantive law may also be, and often is, called remedial when it remedies an existing social problem resulting from a gap, silence, or deficiency of the prior law. In such a situation, the new law should not be applied retroactively, absent a contrary and constitutionally permissive legislative directive. See Rodriguez v. Brown & Root, Inc., 410 So.2d 325 (La.App. 4th Cir.1982); Manuel v. Carolina Casualty Ins. Co., 136 So.2d 275 (La.App. 3d Cir.1961); Tessier v. H.S. Anderson Trucking Co., 713 F.2d 135 (U.S.App.5th Cir.1983).
La.R.S. 1:2 states:
No Section of the Revised Statutes is retroactive unless it is expressly so stated.
In general, laws are deemed to be prospective in effect unless their language *1265 clearly indicates otherwise; exceptions to this general rule are laws which are interpretive, remedial or curative and procedural. Green v. Liberty Mut. Ins. Co., 352 So.2d 366 (La.App. 4th Cir.1977), writ denied, 354 So.2d 210 (La.1978). Interpretive laws do not establish new rights but clarify methods by which existing rights may be enforced; substantive laws generally create new rights where none previously existed. Coates v. Owens-Corning Fiberglass Corp., 444 So.2d 788 (La.App. 4th Cir.1984). A substantive law is one that creates an obligation, while a procedural, remedial or curative statute relates to the form of the proceeding or the operation of the laws. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985). A law will not be applied retroactively if it would operate to disturb vested rights. Graham, 478 So.2d at 1226. As stated by the court in Fullilove v. U.S. Casualty Company of New York, 129 So.2d 816, 824 (La.App.2d Cir., 1961):
`Remedial Statutes' are statutes which confer a remedy, and `remedy' is the means to enforce a right or redress an injury.... `Curative Statutes' are statutes which, by their very nature, are intended to enable persons to carry into effect that which they have designed and intended, but which have failed of their expected legal consequences by reason of some statutory disability or irregularity in their action. (Citations omitted)
La.R.S. 38:2216(H) cannot be viewed as "interpretive" of a right that existed prior to its enactment. Prior to its enactment, it was not against public policy to have a waiver of delay damages in a public contract. See Freeman v. Dept. of Highways, 253 La. 105, 217 So.2d 166. The statute does not clarify procedure or carry into effect that which the parties have designed or intended, so it is neither procedural nor interpretive. The statute creates a right where none existed so it is substantive.
The appellants argue that although enacted five years after change order number four was executed, La.R.S. 38:2216(H) is remedial in nature and should be applied retroactively to nullify change order number four. The appellants rely on Fullilove v. U.S. Casualty Company of New York, supra for the proposition that the legislature may retroactively relinquish vested rights of the state without violating the constitutional prohibition against modification of vested rights.
We find Fullilove to be distinguishable and not dispositive of the present issue. Fullilove dealt with a constitutional amendment, not a statute. The court in Fullilove acknowledged that it need not consider whether the amendment contravened the constitutional prohibitions regarding the impairment of obligations of contracts or divestment of vested rights. In addition, the Constitutional amendment in Fullilove expressly provided for retroactive application. While we might agree with the cited passage in Fullilove stating that "(a)s long as private rights are not infringed, the state may constitutionally pass retrospective laws waiving or impairing its own rights", we find the operative word to be "may" and find no legislative intent that La.R.S. 38:2216(H) be applied retroactively. The statute does not expressly provide for retroactive application and its wording does not imply retrospective intent. As the statute is silent in this respect and does not by its wording indicate retrospective application, we find none.

WHETHER CHANGE ORDER NUMBER FOUR IS A BINDING COMPROMISE AGREEMENT
The appellants argue that change order number four is not a valid compromise agreement because it does not express any consideration given by the State or Retirement Systems.
La.C.C. art. 3071 states:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they *1266 agreed on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
A valid compromise requires some sort of cause or consideration. Burns v. Fernandez, 401 So.2d 1033 (La.App. 4th Cir. 1981).
The appellants argue that change order number four is not a valid compromise agreement because, on its face, it does not express any consideration given by the State or by Retirement Systems. The appellants argue that parole evidence should not be admitted to prove any cause or consideration on the part of the State, citing Lampkins v. Vicksburg, Shreveport and Pacific Railroad Co., 42 La.Ann. 997, 8 So. 530 (1890) to that effect.
We do not find Lampkins to be controlling. La.C.C. art. 3071 was amended in 1981 to provide for open court recitation of compromise agreements. Prior to that amendment, compromise agreements were required to be written and full and complete in themselves.
We have examined the record and find that the commissioner was correct in finding that the State gave consideration for the compromise. As stated in the Commissioner's Written Reasons for Judgment:
In the instant suit, the record clearly shows a dispute existed between the parties concerning the settling of the structure. As provided in the contract pursuant to practices common to the construction business the parties executed a change order in an effort to resolve this dispute. The change order outlined the actual procedures needed to correct the problem and directed that the contractor would bear certain costs. Specifically in Paragraph Four the contractor agreed to bear all costs for any damages and delays incurred by the contractor since October 24, 1985 in connection with the settlement of Footings B-4, C-4, D-4, C-5 and D-5. When the plaintiff signed Change Order Number Four, the contract provided that any delay in completion of the project beyond the agreed upon completion date would result in the assessment of liquidated damages to be paid by the plaintiff. Plaintiff agreed to pay these damages in the original contract and when plaintiff agreed to Paragraph Four of Change Order Number Four. Change Order Number Four clearly provides that the contractor shall bear all costs of any damages, delays and/or additional costs that may have been incurred.... Moreover, Change Order Number Four reflects that the contractor agreed to no change in the contract completion date. This court finds that liquidated delay damages were contemplated by the parties in Paragraph Number Four of Change Order Number Four.
Change Order Number Four became a valid transaction and compromise when it was accepted by the parties. The parties had identified sinking beyond acceptable tolerances in the areas of five (5) footings listed in Change Order Number Four. The parties agreed in Paragraph Number Four that the contractor would bear all costs incurred by the contractor relating to the settlement problem. As to the settling of these five (5) footings, this agreement was intended to provide the necessary remedy for the sinking problem, assess and fix the cost of investigation and testing, and assess the cost for any future settling pertaining to the five (5) listed columns. The intent of the parties to put an end to the litigation through transaction and compromise is a factual determination to be made by the trial judge based upon his evaluation of all of the evidence. Schmidt v. Doe, 514 So.2d 614 (La.App. 4th Cir.1987). Based *1267 on the testimony of witnesses and the language of Change Order Number Four, this Court finds that there is sufficient evidence that the parties did intend to put an end to the dispute as it related to the settling of Columns D-4, C-4, B-4, C-5 and D-5.
The record shows that negotiations leading up to Change Order Number Four resulted in a bilateral agreement in which both sides adjusted their demands in an effort to reach a solution. There is evidence that defendants made concessions in the final draft of Change Order Number Four. A proposed draft of Change Order Number Four was sent to the plaintiff by the defendants originally dated May 20, 1986 containing a clause in which plaintiff and its surety agreed to assume responsibility for all damages incurred by the settlement of three (3) footings (B-4, C-5 and D-5) in areas where settling had occurred and no corrective procedures had been implemented by the plaintiff. The clause further provided that plaintiff and surety would assume responsibility for all damage caused by the settlement of the three (3) footings for a period of five (5) years. Mr. Carlos Guerrero, plaintiff's construction manager for this project, testified that the State wanted the plaintiff to assume total responsibility for any future settlement of the building. The record establishes that this clause was not included in the final draft of Change Order Number Four and in fact was completely deleted from the final agreement. The evidence is clear that the State dropped its plans to order excavation of the other footings in areas where sinking had occurred. The excavation of Column D-4 had already revealed that an undersized footing was in place. (The diameter of the footing was measured to be eight [8'] feet and zero [0"] inches rather than nine [9'] feet and six [6"] inches as required by the specifications). The State was pursuaded not to seek the excavation of other suspect footings. There is sufficient evidence to show that both sides made reciprocal concessions in negotiating Change Order Number Four. The defendant has met his burden of proof in showing that Change Order Number Four was intended to put an end to the dispute and that the State and the contractor did make concessions in the negotiation of Change Order Number Four.
The appellants next argue that Change Order Number Four was not a valid compromise agreement because they signed the change order as a result of economic duress.
We find that the appellants were not victims of economic duress in the execution of the change order for the reasons stated by the Commissioner. As stated in the Commissioner's Written Reasons for Judgment:
In his opposition to defendants' motion for summary judgment previously filed with this court and at this hearing petitioner claims that Change Order Number Four was the product of economic duress and as such Change Order Number Four is not valid. The plaintiff contends that it agreed to Change Order Number Four solely because the State threatened to force the excavation of all footings supporting the building at plaintiff's expense. Plaintiff argues that this excavation will result in tremendous expense and delay that would bankrupt plaintiff's business. Louisiana courts have recognized that economic duress where a party has superior bargaining power over the injured party. Wolf v. State Racing Commission, 545 So.2d 976 (La.1989); Standard Coffee Service v. Babin, 472 So.2d 124 (La.App. 5th Cir.1985). These two (2) cases involved employees who were induced into agreements by the threat of loss of employment and livelihood.
Plaintiff fails in his pleadings to raise any allegations which would show that he agreed to Change Order Four because of economic duress. The State's alleged threat to force an excavation was not *1268 designed to create an economic hardship on plaintiff. The excavation of Column D-4 revealed that the footing was not up to the size specified by the contract. The soil report of soil testing engineers found as causes for the building settling the undersized footing and loose shavings in the hole. The State would have had a valid basis to request an examination of all footings for Columns B-4, C-5 and D-5 to determine if similar problems exist. The contract provided the owner should pay the cost of all tests and excavations where no defects in contract specifications were found. Plaintiff claims it would encounter stressful economic conditions if it refused to sign Change Order Number Four. However, the mere stress of business conditions will not constitute economic duress where the opposing party did not engage in conduct designed to produce that stress. Plaintiff fails to show that Change Order Number Four was the product of economic duress.
This Court recognizes that plaintiff's project manager (Mr. Guerrero) was a sophisticated party skilled in negotiating agreements such as Change Order Number Four. Plaintiff did not negotiate and obtain an extension of time on the contract when negotiating Change Order Number Four. The sinking problem concerning the five (5) listed footings was a cause of the delay in finishing the project. The plaintiff contractually assumed the responsibility for failure to complete the project in the agreed upon time period. As the damages withheld by the State resulted from the settling of the footings listed in Paragraph Four of Change Order Number Four the plaintiff agreed to bear the costs of the damages the State has withheld. This Court finds Change Order Number Four constituted a valid compromise and transaction. The Court further grants the defendants' exception of res judicata based on this compromise.

DEFAULT
The appellants argue that the liquidated damages provision of the contract was not automatic and required that they be placed in default prior to the withholding of liquidated damages. They allege that they were not put in default and seek the return of the funds withheld from the contract price as delay damages.
Former La.C.C. art. 1933, applicable to this contract, states in pertinent part:
When the breach has been passive only, damages are due from the time that the debtor has been put in default, in the manner directed in this chapter.
The rules contained in this and the preceeding articles, however, are subject to the following exceptions and modifications:
1) When the thing to be given or done by the contract was of such a nature, that it could only be given or done within a certain time, which has elapsed, or under certain circumstances, which no longer exist, the debtor need not be put in legal delay to entitle the creditor to damages.
This provision has been construed to mean that in contracts stipulating that they must be executed within a specified time, or where time is of the essence, a putting in default is not necessary. Sollay v. Sollay Foundation & Drilling, 389 So.2d 834 (La.App. 3d Cir.1980). In C-B Construction Company, Inc. v. Kilpatrick, 366 So.2d 990 (La.App. 1st Cir.1978), a contract to repave a parking lot provided that time was of the essence and the owner's lease with a third party provided that the lease was subject to cancellation if the contract to repave the parking lot was not timely completed. We held that it was not necessary to place the contractor in default when he failed to timely perform the contract even though the owner was able to obtain extensions of time from the lessee. The court held that the obtaining of extensions of time from the lessee did not change the importance of time to the building contract. In C-B the contractor failed to avail itself of the provisions in the contract for obtaining an extension of time. *1269 The contractor waited until after the job was completed to request an extension. The court held that the contractor was entitled only to the delays that were properly requested under the contract. The court held that the contractor was not entitled to delays that were not properly requested.
In the present case, the contract expressly provides that time is of the essence. Utley-James did not request additional time when Change Order Number Four was executed in May, 1986. Yet, the project was due to be completed in September, 1986. Utley-James constantly assured the State that the project was proceeding on or ahead of schedule. On October 17, 1986, Utley-James requested an extension of twenty-four weeks to complete the construction. The State denied this request.
The contract and the parties' actions indicate that time was, in fact, of the essence. Utley-James misled the State as to the construction progress and did not request or negotiate for additional time.
We find time was of the essence and it was not necessary to place Utley-James in default prior to withholding liquidated delay damages. Even though the State's refusal to grant an extension of time might not qualify as a placing in default, it is definitely indicative that the State wanted the contract completed and was not acquiescing in an extension of time.
We affirm the decision of the Commissioner and judgment of the trial court. All costs of this appeal are assessed against the appellants.
AFFIRMED.