671 So.2d 385 (1995)
John R. HARRISON
v.
TRUSTEES OF the LOUISIANA STATE EMPLOYEES' RETIREMENT SYSTEM.
No. 95 CA 0048.
Court of Appeal of Louisiana, First Circuit.
October 6, 1995.
*387 Charles A. Traylor, III, West Monroe, for Plaintiff-Appellee John R. Harrison.
R. Stephen Stark, Baton Rouge, for Defendant-Appellant Trustees of the Louisiana State Employees' Retirement System.
Before SHORTESS, FOGG and PARRO, JJ.
FOGG, Judge.
Plaintiff, John R. Harrison, filed suit against defendant, Louisiana State Employees' Retirement System ("LASERS"), seeking a declaratory judgment regarding his entitlement to certain retirement benefits. The parties dispute the proper retirement benefit percentage factor ("benefit factor") applicable to the transfer of eleven and one-half years of creditable service from the District Attorneys' Retirement System ("DARS") to LASERS. The trial court determined the appropriate benefit factor was three percent. We affirm.

FACTS
Plaintiff served as an assistant district attorney and was a member of DARS from August 1, 1970, to December 31, 1981. In 1981, he was elected district judge, Fourth Judicial District Court, Division "D," and took the oath of office on January 1, 1982. Plaintiff timely exercised the option to become a member of LASERS and transferred his eleven and one-half years of service credit from DARS to LASERS. At plaintiff's request, DARS transferred the sum of $45,862.57 to LASERS during January of 1982.[1]
Plaintiff has served as a district court judge since January 1, 1982. Pursuant to Acts 1991, No. 1063 [LSA-R.S. 11:558(A)(5)], plaintiff elected to retire at the end of his present term of office, December 31, 1996.[2] *388 During February of 1992, Judge Harrison received a letter from the Executive Director of LASERS addressing his transferred service credits. The letter states, in pertinent part:
Your credits in [DARS] were transferred in prior to the requirement that transfers be paid for on an actuarial basis. Thus, the credits were transferred in at the rate of 2.5%. There are no provisions of law which permit an "upgrade" of the rate at which service is credited.
Therefore, when you elect to retire, the service transferred in will be calculated at 2.5% per year.
Subsequently, Judge Harrison filed suit against LASERS seeking a judgment declaring the benefit factor applicable to the transferred credits[3] is 3.5% or, in the alternative, 3.0%. The trial judge ruled in favor of plaintiff, setting the benefit factor applicable to the transferred service at 3.0%. LASERS appeals, maintaining the trial court erred in setting the retirement percentage rate in excess of 2.5%. Judge Harrison has answered the appeal and seeks a modification of the judgment to increase the benefit factor from 3.0% to 3.5%.

ISSUES
The issues raised on appeal by both parties are questions of law. LASERS contends (1) the trial court's ruling violates LSA-Const. Art. X, § 29(E), which addresses actuarial soundness; (2) the trial court erred in failing to give retroactive application to LSA-R.S. 11:143(D)(1), which addresses transfers between retirement systems; and (3) the trial court failed to implement the doctrine of contemporaneous construction.
Judge Harrison asserts the benefit factor applicable to his transferred credits is 3.5%, the benefit factor provided by the LASERS plan (governed by LSA-R.S. 11:401 through LSA-R.S. 11:591), which includes the Retirement Plan for Judges and Officers of the Court ("the Judges' plan"), LSA-R.S. 11:551 through 11:571.[4] He calculates the benefit factor to be 3.5%, comprised of the 2.5% plus $300 per year provided by LSA-R.S. 11:444(A)[5] (the factor used pursuant to LASERS' non-judge retirement plan) and the 1% provided by LSA-R.S. 11:557[6] (an additional benefit provided by the Judges' plan.) Alternatively, Judge Harrison contends the legislation governing the LASERS' plan and the Judges' plan during 1982, when his service years were transferred, provides the applicable benefit factor of 3.0%.[7]

ANALYSIS

A. LAW IN EFFECT WHEN THE TRANSFER OCCURRED
We must determine the applicable benefit factor pursuant to the law in effect when the transfer of service credits was effected, January 25, 1982, prior to addressing the issues concerning retroactive application of subsequently enacted constitutional and statutory provisions affecting the various retirement plans.
The Louisiana Legislature first adopted the Judges' plan, a contributory retirement plan for judges and officers of the court pursuant to Acts 1976, No. 518.[8] The plan, implemented as part of the LASERS plan, designated the employer and employee contributions to be made to the system. It provided for an additional retirement benefit *389 of 1% for judges and court officers and provided for the transfer of creditable service from other retirement systems. The Judges' plan has been governed by the specific provisions contained in this act, the amendments to these provisions, and the general provisions of the LASERS plan.
Acts 1976, No. 518, was in effect when DARS transferred Judge Harrison's eleven and one-half years of service credits to LASERS. The following provisions, in pertinent part, are relevant to the issues raised in this appeal:
§ 11. Membership in the Louisiana State Employees' Retirement System
Anything in R.S. 42:553 [addressing classes of employees not eligible to be a member of LASERS] to the contrary notwithstanding, the judges and court officers set forth in Section 13 of this Part shall be eligible to become members of [LASERS] and obtain credit in and transfer credit to said system, as set forth herein....
. . . .
§ 13. Eligible judges and court officers This Part shall apply to all present and future judges and court officers hereinafter enumerated:
. . . .
(4) Judges of the district courts.
. . . .
§ 15. Additional benefits
Any person covered by this Part who elects to become a member of [LASERS] shall receive an additional benefit equal to one percent times the number of years of service as a judge or court officer times his average compensation.
. . . .
§ 17. Transfer of creditable service Notwithstanding any other provision of law to the contrary, any person covered by this Part who elects to become a member of [LASERS], shall ... have the right to transfer to [LASERS] his total accredited years of service from any other state, municipal, parochial, or other statewide or local retirement system which he leaves or has left. Transfer shall be effective upon the certification of total service credit by the retirement system transferring the member to [LASERS]. The retirement system transferring the member also shall transfer the employee and employers contributions to the account of the transferee in full to [LASERS].
§ 18. Contributions
In addition to the regular employee contribution required by law to be paid into [LASERS] by its members, each ... member... shall contribute to said system an amount equal to four percent of all salary or compensation received by him for service as a judge or as a court officer....
DARS was established pursuant to Acts 1956, No. 56.[9] This act set forth membership eligibility, conditions of membership and the requisite contributions to finance the system. At the time of the transfer, LSA-R.S. 16:1042[10] (as amended by Acts 1975, No. 745) provided for the following retirement allowances for its members, in pertinent part:
For members who retire after August 1, 1975, the annual amount of the retirement allowance shall consist of:
(1) A member's annuity which shall be the actuarial equivalent of the accumulated contributions of the member at the time of retirement, computed according to the actuarial table in use by the system; and
(2) An employer's annuity which together with the member's annuity provided above, shall be equal to three percent of his average final compensation for each year of membership service. [Emphasis added.]
When the transfer of service credits was effected, the LASERS' non-judge plan, pursuant to LSA-R.S. 42:575(A) (Acts 1973, No. *390 4)[11] provided the following, in pertinent part, regarding computation of the retirement benefit:
A member who retires effective July 1, 1973 and thereafter shall receive a maximum retirement allowance equal to two and one-half percent of average compensation for every year of creditable service plus three hundred dollars. [Emphasis added.]
The parties concede that at the time of the transfer in question, the law specifically provided that service credit could be transferred from DARS to LASERS but did not specifically provide whether the benefit factor of the transferring system (the 3% factor) or the receiving system (the 2.5% factor) should be applied in calculating the retirement benefits.
Our review of the statutes creating and governing the various public retirement systems reveals that the benefit factors and the amount of contributions made into the systems have varied from system to system and have changed over the years. When the legislature authorized transfers from one system to another yet failed to address the different benefit factors, contributions and retirement benefits to be paid by each system, the actuarial soundness of the individual systems was either not considered or was overlooked. A procedure for transferring benefits which evaluated the credits being transferred and compared the benefits of the transferring and receiving systems was clearly needed. A gap in the law existed, which was not remedied until legislation was enacted in 1984[12] to specifically address transfers between public retirement systems. We find the absence of this procedure prior to the 1984 amendment rendered the statutory scheme ambiguous with respect to the implementation of the transfer of benefits. More specifically, the statutory scheme was ambiguous regarding the applicable benefit factor to be used in calculating Judge Harrison's retirement benefit for the eleven and one-half years of transferred creditable service.
Louisiana courts have consistently held that pension statutes must be liberally construed in favor of the intended beneficiaries. Swift v. State of Louisiana, 342 So.2d 191 (La.1977). The law does not favor denial of retirement benefits whenever there exists a reasonable construction otherwise. West Monroe Police Pension and Relief Fund v. Lofton, 356 So.2d 1126 (La.App. 2d Cir.1978). Thus, any ambiguity in such a statute must be resolved in favor of the retiree. Swift, 342 So.2d at 196; Groves v. Board of Trustees of the Teachers' Retirement System, 324 So.2d 587 (La.App. 1st Cir.1975), writs denied, 326 So.2d 378, 380 (La.1976). Moreover, our review of the statutory scheme does not reveal a legislative intent, either express or implied, which requires us to apply the smaller or the larger benefit factor in calculating the benefits applicable to Judge Harrison's transferred years of service. Accordingly, we conclude that plaintiff-appellee is entitled to have LASERS calculate the benefits applicable to his transferred years of credit using the 3.0% benefit factor employed by DARS pursuant to LSA-R.S. 16:1042 (as amended by Acts 1975, No. 745) rather than the 2.5% benefit factor employed by the LASERS' non-judge plan, pursuant to LSA-R.S. 42:575 (Acts 1973, No. 4).

B. 2.5% BENEFIT FACTOR
LASERS presents two arguments in support of its claim that the benefit factor should be 2.5%. It argues that the contemporaneous construction doctrine should be applied, giving effect to the 2.5% benefit factor that LASERS has used in determining benefits to other similarly situated retirees. Also, LASERS argues that our state constitution prohibits the use of a benefit factor in excess of 2.5%.

1. Contemporaneous Construction
LASERS asserts it has routinely allowed a transfer of credit at the rate of 2.5% per year of service for all judges situated similarly to Judge Harrison. As such, LASERS contends that its application of the *391 2.5% benefit factor is supported by the doctrine of contemporaneous construction. LASERS recognizes there was no statute in effect during 1982 setting forth the benefit factor to be used in calculating retirement benefits for transferred service.
The issue of what benefit factor is applicable to the transfer of service credit from DARS to LASERS is a question of law to be determined upon judicial review with little or no deference to the determinations made by LASERS. See Hay v. South Central Bell Telephone Co., 475 So.2d 1052 (La. 1985); see also Massey v. Board of Trustees, 500 So.2d 864 (La.App. 1st Cir.1986), writ denied, 501 So.2d 775 (La.1987).
We recognize that generally where a statute is ambiguous, a long-settled contemporaneous construction by those charged with administering the statute is given substantial and often decisive weight in its interpretation. Traigle v. PPG Industries, Inc., 332 So.2d 777 (La.1976). However, since there was no statute specifically addressing the issue of what benefit factor should be applied in a transfer between two retirement systems which used different benefit factors, we do not believe that LASERS' response to the gap in the law should be given any weight. To hold otherwise would, in effect, give LASERS the power to legislate and would operate against the principle that legislation providing retirement benefits must be liberally construed in favor of retirees.

2. Application of the Constitutional Provision
LASERS asserts that LSA-Const. Art. X, § 29(E)(4) protects the actuarial soundness of LASERS and other state retirement systems by prohibiting the state from taking "any action that shall cause the actuarial present value of expected future expenditures of the retirement system to exceed or further exceed the sum of the current actuarial value of assets and the actuarial present value of expected future receipts of the retirement system...." LASERS argues that this provision will be violated if LASERS uses a benefit factor in excess of 2.5% to calculate Judge Harrison's retirement benefits for the transferred years of service in question.
LASERS' argument ignores the fact that this constitutional provision did not become effective until Dec. 23, 1987[13] and cannot be applied retroactively. LSA-Const. Art. XIV, § 26. Although Judge Harrison has not yet retired, LSA-Const. Art. X, § 29(E) cannot operate to divest him of retirement rights which became vested at the time of the transfer in 1982.
Article X, § 29(B) of the 1974 Louisiana Constitution provides in part:
Membership in any retirement system of the state or of a political subdivision thereof shall be a contractual relationship between employee and employer, and the state shall guarantee benefits payable to a member of a state retirement system or retiree ... upon his death.
The Louisiana Constitution of 1974, Art. I, § 23 provides that no law impairing the obligation of contracts shall be enacted. A law will not be applied retroactively to disturb vested rights. Graham v. Sequoya Corp., 478 So.2d 1223 (La.1985); Utley-James v. State, Div. of Administration, 593 So.2d 1261 (La.App. 1st Cir.1991), writ denied, 597 So.2d 1036 (La.1992). Vested retirement rights are contractual obligations that cannot be divested by the retroactive application of a law. Moise v. Louisiana State Employees' Retirement System, 366 So.2d 1054 (La.App. 1st Cir.1978), writ denied, 368 So.2d 124 (La.1979).
Louisiana jurisprudence generally provides that a public employee's right to retirement benefits does not become vested until eligibility for retirement is attained and that prior to the achievement of retirement eligibility, the details of a contributory retirement system may be modified by the legislature to the prejudice of the employee. Patterson v. City of Baton Rouge, 309 So.2d 306 (La.1975); Louisiana State Troopers Association, Inc. v. Louisiana State Police Retirement Board 417 So.2d 440 (La.App. 1st Cir.1982). However, this general principle is *392 not controlling in this case because vesting is statutorily controlled pursuant to Acts 1976, No. 518, § 24,[14] which provides:
Any person covered by this Part [the Judges' plan] who elects to become a member of [LASERS] shall be immediately vested with all the benefits, emoluments, and conditions of the system and also with the additional benefits provided by this Part.
Upon becoming a member of the Judges' plan in January of 1982, Judge Harrison was immediately vested with the benefits set forth in LASERS, including the benefits of the Judges' plan, including the 3% benefit factor applicable to transferred service. A subsequently enacted constitutional provision or statute cannot operate to divest Judge Harrison of this benefit. We do not reach the merits of whether LSA-Const. Art. X, § 29(E) would preclude LASERS' use of the 3% benefit factor because even if it did, the provision cannot operate retroactively to divest Judge Harrison of rights which became vested in 1982.

C. RETROACTIVITY OF REMEDIAL LEGISLATION
LSA-R.S. 1:2 states:
No Section of the Revised Statutes is retroactive unless it is expressly so stated.
LSA-C.C. art. 6 provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
Laws which are remedial or curative will not be applied retroactively if such application would operate to disturb vested rights. Utley-James, 593 So.2d at 1264-1265.
Subsequent to the transfer of Judge Harrison's service credits, Acts 1984, No. 733 was enacted, which provided a procedure for transferring benefits from one public retirement system to another and took into consideration that the transferring and receiving systems might employ different benefit factors in determining benefits. This procedure, which has been subsequently amended, is currently set forth in LSA-R.S. 11:143. LASERS argues that this statute is remedial and should be applied retroactively to determine the applicable benefit factor. The pertinent provisions are:
C. (1) The system ... from which the person transfers ... credit shall transfer to the receiving system ... all employee contributions, [and] all employer contributions....
(2) In addition to transferring the above sums, the transferring system ... shall transfer a sum, representing interest, equal to the board approved actuarial valuation rate of the transferring system ... compounded annually, of all contributions per annum from each year of contribution to the date of transfer.
D. (1) In the event that the amount of funds transferred is less than the amount that would have been contributed by the person and his employer, including interest earned thereon at the board approved actuarial valuation rate of the receiving system, had all of the person's credit originally been credited under the law governing the receiving system ..., the person transferring, except as provided for herein, shall pay the deficit or difference including the interest thereon at the board approved actuarial valuation rate of the receiving system.
(2) In lieu of paying the deficit or difference plus interest, the person may at his option, but only at the time of transfer, be granted an amount of credit in the receiving system ... which is based on the amount of funds actually transferred by the transferring system ... based on a year-to-year comparison.
. . . .
(4) In the event that a person completes a transfer under the provisions of this Section, the retirement percentage factor of the transferring system shall be used to calculate his retirement benefit based on the number of years transferred. [Emphasis added.]
*393 LASERS contends the funds transferred from DARS to LASERS is less than the amount that would have been contributed (employer and employee contributions and the interest that would have been earned on these sums) had Judge Harrison's retirement been governed by the LASERS system. Thus, LASERS contends Judge Harrison is not entitled to use the DARS benefit factor of 3% in calculating his retirement benefit relative to his eleven and one-half years of transferred credit unless he pays the deficit referred to in Section D(1).
The record before this court does not contain the information needed to perform the calculations required by Section D. In particular, the record does not contain the board approved actuarial valuation rates of the transferring and receiving systems. Thus, we cannot determine whether a deficit would result pursuant to these calculations. We note, however, that DARS transferred to LASERS the employee and employer contributions paid into its system along with a sum that represented interest on the employee contributions. This transfer satisfied the law in effect during 1982. Acts 1976, No. 518, § 17 required the transfer of the employee's and employer's contributions but did not mandate that any specified amount of interest on the employee's and employer's contributions be transferred with these sums. We recognize that application of the current law to the transfer at issue would probably have required a greater sum to be transferred from DARS to LASERS and may have also resulted in a deficit between the amounts transferred and the amounts that would have accrued in the LASERS system.
There is no legislative expression regarding whether LSA-R.S. 11:143 should be applied retroactively or prospectively only. Although the statute is remedial legislation since it remedied the gap or deficiency of the earlier law in effect at the time of the transfer, the statute cannot operate retroactively if such application deprives Judge Harrison of rights which were vested at the time of the transfer. Therefore, even if LSA-R.S. 11:143 would require Judge Harrison to pay additional funds (or accept a lesser amount of credit in lieu of paying the difference), as LASERS contends, the statute could not be applied retroactively because it would operate to divest him of vested retirement rights (i.e., his entitlement to the 3% benefit factor without having to meet the conditions set forth in LSA-R.S. 11:143). Based on the facts of this case, we conclude LSA-R.S. 11:143 does not apply retroactively.

D. ADDITIONAL BENEFITS OF THE JUDGES' PLAN
Judge Harrison asserts the benefit factor applicable to his transferred credits is 3.5%, comprised of the 2.5% plus $300 per year provided by LSA-R.S. 11:444(A) (the factor used pursuant to LASERS' non-judge retirement plan) and the 1% currently provided by LSA-R.S. 11:557 (an additional benefit provided by the Judges' plan). We have determined that the benefit factor used by DARS (3.0%) at the time of transfer rather than the benefit factor used by LASERS (2.5%) is applicable, and now address whether Judge Harrison is entitled to the additional 1% benefit provided by the Judges' plan. At the time of the transfer, the Judges' plan (Acts 1976, No. 518, § 15) provided in pertinent part:
Any person covered by this Part who elects to become a member of [LASERS] shall receive an additional benefit equal to one percent times the number of years of service as a judge ... times his average compensation.
The trial court rejected Judge Harrison's argument based on the following reasoning:
[the Judges' plan] awards the extra one percent only for the years that an individual serves as a judge. Plaintiff did not serve as a judge during his eleven and one-half years as an [Assistant District Attorney], nor did he purchase these credits at the judge's rate of three point five percent. Under these circumstances, the Plaintiff is not entitled to the three point five percent rate for these transfer credits.
We agree with the reasoning of the trial court. The Judges' plan clearly provides that the additional 1% benefit applies only to years of service as a judge. We recognize this court has allowed "service other than as a judge" to be given effect as "service as a *394 judge" in Boyd v. Louisiana State Employees' Retirement System, 453 So.2d 243 (La. App. 1st Cir.), writ denied, 454 So.2d 127 (La.1984). However, we find the facts of Boyd to be distinguishable from the facts of this case.
In Boyd, several judges sought a declaratory judgment against LASERS seeking interpretation of the Judges' Plan and Acts 1982, No. 769, which provided for the uniform purchase of military service for fourteen different state retirement systems. The disputed issues included (1) the employee contribution rate that the judges were required to pay to obtain credit for the military service and (2) the applicable benefit formula for determining the judges' credit for military service for the purpose of calculating retirement benefits pursuant to the Judges' plan.
Acts 1982, No. 769, § 1, enacted LSA-R.S. 42:697.11. Section B of that statute provided for payment for the purchase of military service, in pertinent part, as follows:
In order to obtain such credit the member shall pay into the system an amount equal to the current employer and employee contributions based on the member's average base pay for the first thirty-six successive months of credited service in the applicable system plus five percent compound interest per year from the date the member joined the system until paid.
The pertinent provisions of the Judges' plan in effect at that time (Acts 1976, No. 518) authorized judges to become members of LASERS. The employee contribution the judges were required to pay into the system was fixed at 11% and was comprised of the regular employee contribution of 7% (the regular non-judge contribution authorized by LSA-R.S. 42:651) and an additional 4% contribution pursuant to § 18 of Acts 1976, No. 518 (LSA-R.S. 13:18).
The court determined that Act No. 769 clearly provided that the "current employee contribution" applicable to the judges' purchase of military service was 11%. The court next addressed the issue of whether the years of military service were to be treated as years of service as a judge for the purpose of calculating retirement benefits. The court recognized that military service time is not service as a State employee, but is rather service for which the legislature determined that credit shall be obtainable by purchase in certain situations specified by the act. The court noted that but for the difference in the contribution rate required of judges and the additional benefit provided for the judges, the question of whether the years should be counted as "years of service as a judge" would not arise. Boyd, 453 So.2d at 247.
In determining that the years of military service were to be considered as "service as a judge" for purposes of calculating the retirement benefits, the Boyd court stressed that the actuarial nature of the retirement system requires different benefit rates for different types of contribution, not different types of credit. Since the military credit was purchased at the 11% rate provided for by the Judges' plan (rather than the 7% rate of the non-judges LASERS plan), the court determined that the judges were entitled to the additional 1% benefit factor provided for by the Judges' plan. The court reasoned as follows[15]:
To require a person to purchase military time at a high rate and allow him benefits credit at a low rate would run counter to the entire concept of an actuarially sound system. The sole purpose for requiring the additional 4% contribution by judges and court officers is to pay for the extra 1% benefit afforded such members. This is in keeping with the actuarial principles upon which the system is based. 453 So.2d at 248.
Analyzing the facts of the case before us, we find the employee contributions made by Judge Harrison into DARS were significantly lower than the 11% contributions being paid by judge-members of LASERS. During Judge Harrison's years of service as an assistant district attorney, the statutory provisions initially required employees to contribute 5% of earnable compensation (Acts 1958, No. 156, § 1) and later required employees to contribute 7% of earnable compensation *395 (Acts 1975, No. 745, § 1). Thus, since the contribution rate applicable to Judge Harrison's years of service as an assistant district attorney was considerably lower than the 11% contribution rate that applies to his years of service as a judge, we believe the additional 1% benefit factor should not be applied when calculating the benefits pertaining to the transferred years of service. Since this court in Boyd recognized that different benefit rates should be applied when the contribution rates differ, we do not find the holding of Boyd to be controlling in this instance.[16] Accordingly, we hold that Judge Harrison is not entitled to the additional 1% benefit provided by the Judges' plan in determining the retirement benefits applicable to his eleven and one-half years of transferred service.

CONCLUSION
For the above reasons, we conclude that, as a matter of law, the retirement benefit percentage factor applicable to the transfer of eleven and one-half years of creditable service from the DARS to LASERS is 3.0%. The judgment of the trial court is affirmed. The costs of this appeal in the amount of $370.36 and the trial court costs in the amount of $256.80 are assessed against defendant, Louisiana State Employees' Retirement System.
AFFIRMED.
NOTES
[1] The amount transferred represented employee contributions in the amount of $17,453.16, interest on that sum in the amount of $1,189.41, and employer contributions of $27,220.00.
[2] The parties agree that plaintiff is covered by the provisions of LSA-R.S. 11:551 through 11:571, which pertain to Judges and Officers of the Court, and that the provisions of LSA-R.S. 11:1351 through 11:1358, pertaining to the Judges' Non-Contributory Plan, are not applicable to plaintiff.
[3] The parties dispute only the benefit factor applicable to the 11.5 years of transferred district attorney service. The parties do not dispute the benefit factor to be applied to Judge Harrison's years of service as a judge.
[4] The statutory provisions addressing the Judges' system were redesignated into Title 11 from Title 13 pursuant to Acts 1991, No. 74.
[5] Formerly LSA-R.S. 42:575(A).
[6] Formerly LSA-R.S. 13:15, Acts 1976, No. 518, Section 15.
[7] Judge Harrison also asserts that Acts 1984, No. 733, Section 1, which enacted R.S. 42:697.1, is remedial legislation supporting his claim for the application of the 3.0% benefit factor.
[8] Acts 1976, No. 518 amended former Title 13. The statutory provisions addressing the Judges' system were redesignated into Title 11 from Title 13 pursuant to Acts 1991, No. 74.
[9] The act was amended by Acts 1958, No. 156, Acts 1975, No. 745 and Acts 1979, No. 585. Further amendments enacted subsequent to the transfer of service are not relevant to this appeal.
[10] Pursuant to Acts 1991, No. 74, the statutory provisions addressing DARS have been redesignated into Title 11, R.S. 11:1581 et seq, from Title 16, LSA-R.S. 16:1001 et seq.
[11] Pursuant to Acts 1991, No. 74, the provisions addressing LASERS were redesignated into Title 11 from Title 42.
[12] See, Acts 1984, No. 733, which enacted LSA-R.S. 42:697.1.
[13] This provision was added by Acts 1987, No. 947, § 1.
[14] The current statutory provision, LSA-R.S. 11:568, provides for immediate vesting.
[15] Judge Lottinger, writing for this court, adopted the trial court's reasons for judgment.
[16] We note that Judge Harrison does not cite Boyd as authority for the proposition that he is entitled to the additional 1% benefit factor. He cites Edwards v. Trustees of the Louisiana State Employees' Retirement System, 600 So.2d 1353 (La.App. 1st Cir.), writ denied, 601 So.2d 663 (La.1992), which did not interpret the statutory provision in question, Acts 1976, No. 518, § 15, or subsequent amendments to this provision. In Edwards, the court stated in dictum that extra retirement credit and maximum benefits to a judge-member of LASERS for service other than as a judge have been given effect as service as a judge, citing Boyd as authority for this proposition.