JONES, Judge.
This appeal arises from an application by the plaintiff, Irwin Mastio, for a service-connected disability pension. The request for an increase in benefits was made at a meeting of the Board of Trustees of the Firefighters’ Pension and Relief Fund on June 11, 1992. The Board rendered a decision on September 10, 1992 denying the firefighter’s request to have the Board consider his application for increased disability benefits.
Upon the Board’s decision, the plaintiff timely perfected an appeal to the original decision. On November 17, 1992, a hearing was held before the Firefighter’s Pension and Relief Committee, and the plaintiff called Dr. Oliver Sanders as his expert witness. The medical records of the plaintiff at the time of his initial application for pension benefits, including the reports of Drs. Christopher Meyers and Madeline Heidelberg were stipulated into evidence. On December 10, 1992, the Committee issued a decision refusing to reopen the plaintiffs application for pension benefits.
laThe plaintiff appealed to the Civil District Court and a hearing was held before the trial court on June 28,1993. The written decision issued by the trial court was in favor of the Board of Trustees. The trial court determined that the Board made a credibility finding against the expert witness of the plaintiff, Dr. Sanders, and in favor of Dr. Heidelberg. The trial court explained that it was not within its jurisdiction to review such a finding of fact. Furthermore, the trial court alluded that the plaintiffs right of action had prescribed.
Plaintiff now appeals, seeking review of the trial court’s decision to affirm the decision of the Administrative Board. On appeal, the plaintiff assigns the following errors:
(1) The trial court erred in affirming the decision of the Board denying the plaintiff the right to apply and prove his entitlement to a service-connected disability pension; (2) the trial court erred in accepting the Board’s determination that Dr. Sanders’ testimony *1264 was not credible as opposed to the report of Dr. Heidelberg on the issue of the plaintiffs mental capacity when he applied for his pension; and (3) the trial court erred in applying prescription to limit the plaintiffs legal right of action.

FACTS

Plaintiff served as a firefighter for the City of New Orleans for six years (November 1969 — November 1975). After his rookie year, he became a permanent firefighter. In July of 1974, plaintiff went on sick leave for approximately 13 months because of a nervous condition. During this time period, the plaintiff commenced receiving outpatient psychiatric treatment and later came under the care of Dr. Meyers.
On October 15,1975, Mr. Bernard Nicolay, Secretary-Treasurer for the Firefighters’ Relief and Pension Fund, sent a letter to the plaintiff notifying him |3that his sick leave would expire on November 17, 1975 and that an application for pension benefits should be submitted prior to that time. Additionally, by letter dated October 22,1975, Mr. Nicolay requested that Dr. Meyers render a diagnosis and prognosis on the plaintiffs condition. Dr. Meyers replied on October 30, 1975, diagnosing a personality disorder with dependent and depressive features. Dr. Meyers stated that the probable cause was the occurrence of multiple factors in the plaintiffs childhood and adolescence that influence personality formation.
On October 24, 1975, the plaintiff was admitted to the Southeast Louisiana Hospital in Mandeville. Additional correspondence from the Fund dated November 12, 1975 was sent to plaintiffs spouse, Mrs. Sandra Mastio, requesting a letter from the plaintiffs physician providing a diagnosis and stating whether the plaintiff was capable of conducting his own personal affairs. The letter further stated that if Mr. Mastio was not capable of conducting his affairs it would be wise to engage legal counsel to handle the matter. Dr. Heidelberg sent a letter dated December 2, 1975, to the Pension Fund stating that the plaintiff had been admitted to a hospital on October 24, 1975, for schizophrenia, paranoid type. Dr. Heidelberg further stated that the plaintiff was totally disabled in regard to performing fire fighting duties, but that he was capable of conducting his own affairs.
At the beginning of January, the plaintiff met with Mr. Nicolay to sign a pension application requesting a service-connected pension. Around this same time, the plaintiff informed the Fund that he had been released and was fully recovered. As a result, Mr. Nicolay sent a letter to Dr. Heidelberg dated January 6,1976, requesting an updated diagnosis. On January 12, 1976, Dr. Heidelberg sent a letter to the Fund confirming her prior diagnosis, and stating that the plaintiffs condition was unchanged.
LOn January 14, 1976, the Board met and found that there was insufficient evidence to support the award of a service-connected disability pension, and instead awarded a non service-connected disability pension. The plaintiff was notified by certified mail that he had been granted a non service connected disability pension to become effective November 23, 1975. The letter informed the plaintiff of his right to request a hearing within ten days if he wanted to appeal the pension award. The plaintiff did not request a hearing.
In early 1992, the plaintiff secured legal counsel and requested an increase in benefits at a meeting of the Board of Trustees and was denied. At the hearing, the plaintiff presented Dr. Sanders who testified that the cause of the plaintiffs disability was a post-traumatic stress disorder resulting from the plaintiffs work as a firefighter. Dr. Sanders gave testimony that his conclusions were based on two forty-five minute interviews with the plaintiff on April 13, 1992 and November 9, 1992. On behalf of the defendant, Mr. Nicolay gave testimony that adequate notification and the proper process was followed in handling the plaintiffs initial application for pension benefits.
In his first assignment of error, the plaintiff contends that the trial court erred in affirming the decision of the Board denying him the right to apply and prove his entitlement to a service-connected disability pension. The plaintiff argues that there are extenuating circumstances regarding his *1265 claim which would require the Board to consider the plaintiffs application for a service-connected disability pension. Plaintiff argues that the Board’s decision to reject Dr. Sanders’ testimony and base its decision on Dr. Heidelberg’s report was arbitrary and capricious because the Board was unclear as to what Dr. Heidelberg meant by stating that the plaintiff could handle his own affairs. Plaintiff also points to the fact that he did not receive the pension he | ¿requested, and he did not have a representative to assist him in the application process for his pension benefits.
The Administrative Procedure Act sets a very deferential standard and high burden of proof for the appellant in attempting to overturn the decision of the administrative decision maker. The pertinent provision of the Administrative Procedure Act is La.R.S. 49:964 G(6) which provides:
... The Court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: ...
(6) Manifestly erroneous in view of the reliable, probative, and substantial evidence on the whole record ...
Unless the Board was manifestly erroneous in its decision, the court has no authority to reverse the Board’s decision.
La.R.S. 11:3376 (formerly La.R.S. 33:2113) governs whether the Board has the authority to accept an application for increased pension benefits. It provides, in pertinent part:
A. If any member of the fire department of the city, while in the performance of his duty, becomes and is found upon examination by the department physician to be physically or mentally permanently disabled and incapacitated from performing his duties as a member of the fire department, ... by reason of service in the fire department, the board on application by the member for disability payments in accordance with this subpart [Part] on a form provided by the board shall request that the civil service physician certify the fact of disability of said applicant, and the board of trustees by majority vote of its members shall determine whether or not the member should be retired for disability.
This statutory language has been consistently interpreted by the Board as preventing review of an application of a fire fighter who is no longer employed. This interpretation was adopted based on the statutory mandate that “the member must become disabled and the disability must be certified | Awhile in the performance of his duty’, and that the Board must determine whether or not to retire him from active service on account of his disability.” The Board found that since the plaintiff did not establish that some unique issues or extenuating circumstances existed which would distinguish his ease from prior cases decided by the board, it could not review plaintiff’s application.
The plaintiff waited sixteen years after his retirement to seek an increase in his pension benefits. In rejecting the plaintiffs application, the Board merely followed its previous decisions, and therefore the Board’s refusal to accept the plaintiffs application for increased pension benefits was not manifestly erroneous. The trial court did not commit an error in affirming the Board’s denial of the plaintiffs application of benefits.
In his second assignment of error, plaintiff maintains that the district court erred in accepting the Board’s determination that Dr. Sanders’ testimony was not credible, as opposed to the report of Dr. Heidelberg, on the issue of the plaintiffs mental capacity at the time he applied for his pension. Dr. Heidelberg served as the treating physician of the plaintiff at the time of his initial application for pension benefits. Dr. Heidelberg diagnosed the plaintiff as suffering from schizophrenia, paranoid type, but noted that the plaintiff was capable of handling his own affairs. Dr. Sanders, on the other hand, examined the plaintiff sixteen years later when he brought his subsequent claim before the Board. Dr. Sanders diagnosed the plaintiff as suffering from a post-traumatic stress disorder caused by his activities as a firefighter. Plaintiff argues that the Board’s rejection of Dr. Sanders’ opinion is tantamount to having no opinion at all since the *1266 Board did not truly understand Dr. Heidelberg’s report.
Under the Administrative Procedure Act, the court is limited in its scope of review. In Holiday Bossier Ltd. Partnership v. Louisiana Tax Com’n, 574 So.2d 1280, 1285 (La.App.2d Cir.), writ den., 578 So.2d 136 (La.1991), citing Hanson v. Louisiana Racing Commission, 436 So.2d 1308 (La.App. 4th Cir.), writ den., 443 So.2d 592 (La.1983), the court stated that where the administrative agency or hearing body was the trier-of-fact, the court’s review of evidence is limited to:
(1)determin[ing] if the hearing was conducted in accordance with the authority and formalities of the statute; (2) deter-minfing] whether or not the fact findings of the body were supported by substantial evidence; and, 3) whether or not the hearing body’s conclusions from these factual findings were arbitrary or constituted an abuse of the hearing body’s discretion....
As to the specific issue of the credibility of a witness, courts have held that it is a matter to be determined by the administrative body, not the court. Hanson, supra at 1309; Jacomet v. St. Landry Parish School Bd., 386 So.2d 1056 (La.App. 3d Cir.), writ den. 393 So.2d 745 (La.1980). Although the court does not have the authority to determine the credibility of witnesses before the Board, the court does have the duty to determine whether the findings of the Board are supported by sufficient evidence. Hanson, supra.
A review of the record shows that Dr. Sanders based his opinion on two 45 minute interviews with the plaintiff. Dr. Sanders formed his opinion without the assistance of medical records from the treating physicians, without any history from the plaintiff regarding any personal, family, or other problems, and without any contact with the medical health personnel who treated the plaintiff at anytime from 1975 to the time of the hearing. On the other hand, Dr. Heidelberg was the attending physician and corresponded with the Board during the plaintiffs initial application for pension benefits.
| sit was within the Board’s discretion to accept the opinion of the plaintiffs original treating physician over that of a physician who merely interviewed the plaintiff sixteen years later. Since the Board was within its discretion, and its decision was supported by the facts, the trial court did not err in upholding the Board’s determination that Dr. Sanders’ opinion was not credible.
In his third assignment of error, the plaintiff asserts that the trial court erred in applying prescription to limit his legal right of action. The plaintiff argues that the Administrative Procedure Act does not contain any statute of limitation, and Louisiana has not adopted any Common Law statute of limitation. Plaintiff argues that if a statute of limitation could be applied to this ease, the doctrine of contra non valentem would defeat the application of prescription.
La.C.C. art. 3499 reads as follows: “Unless otherwise provided by legislation, a personal action is subject to a liberative prescription of ten years.” Under Louisiana law, a suit involving pension benefits is a personal action subject to the prescriptive period of ten years. Carpenters Local Union No. 18U6 of United Broth, of Carpenters and Joiners of America, AFL-CIO v. Pratt-Famsworth, Inc., 609 F.Supp. 1302 (E.D.La.1984); State ex rel. Spann v. Board of Trustees of Police Pension Fund for City of New Orleans, 283 So.2d 294 (La.App. 4th Cir. 1973).
The plaintiff claims that even if a statute of limitation applies, the doctrine of contra non valentem bars prescription in this case. The doctrine of contra non valen-tem is a judicially created exception to the general prescription rules. This doctrine applies in four unique situations:
(1) where there was some legal cause which prevented the courts or their officers from taking cognizance of or acting on the plaintiffs faction;
(2) where there was some condition, ... connected with the proceeding which prevented the [plaintiff] from suing or acting;
(3) where the [defendant] himself has done some act effectually to prevent the [plaintiff] from availing himself of his cause of action;
(4) where the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced *1267 by the defendant. Rajnowski v. St. Patrick’s Hosp., 564 So.2d 671, 674 (La.1990).
In the present case, the doctrine of contra non valentem does not apply because this case fits none of the aforementioned situations. The plaintiffs action falls under La.C.C. art. 3499 and has prescribed because the appellant waited a period of sixteen years to bring his action.
The plaintiff failed to present any evidence to support a finding that extenuating circumstances exist that would make the doctrine of contra non valentem applicable to this case. At no time did the Board withhold information from the plaintiff, nor was the appellant under the control of the Fund or its officers. The Board followed the proper process in handling the plaintiffs application for pension benefits. Furthermore, at the time that the plaintiffs initial application was processed, his original treating physician stated that the plaintiff was “capable ... of conducting his own affairs.” Therefore, the doctrine of contra non valentem does not apply and the plaintiffs cause of action has prescribed.
Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.