| ¡.KUHN, J.
In this appeal, we consider whether “earnable compensation,” as used in Louisiana Revised Statutes 11:701(10), includes amounts paid as a supplemental salary to a member of the Teachers’ Retirement Sys-tern of Louisiana (“TRSL”). This issue affects the amount of contributions that employers and members must pay into the system and the member’s retirement allowance.
Judith Fishbein, M.D., who is a TRSL member, retired after more than thirty years of employment with Louisiana State University Health Sciences Center (“LSU” or “the Health Sciences Center”). During a number of those years, LSU paid Dr. Fishbein both a “base salary” and a “supplemental salary,” but it deducted member contributions and made employer contributions to TRSL only on the “base salary.” Dr. Fishbein filed suit, wherein she sought declaratory and mandamus relief against the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College through the Health Sciences Center (“LSU’s Board of Supervisors”) and the Board of Trustees of the Teachers Retirement System of Louisiana (“TRSL’s Board of Trustees”). Specifically, Dr. Fishbein sought a declaratory judgment that the supplemental salary she earned is part of the “average earnable compensation” upon which her retirement benefits are to be calculated pursuant to Louisiana Revised Statutes llUfiS.[1] Dr. Fishbein also requested a writ of mandamus that: 1) ordered the defendants to certify that her “average earnable compensation” includes both her base and supplemental 13salaries for purposes of calculating her retirement benefits, and 2) directed LSU’s Board of Supervisors to send this certification and applicable contributions pertaining to her supplemental salary to TRSL.[2]
*60 After a trial on the merits, the trial court signed a judgment dismissing Dr. Fishbeiris suit because “her claim had prescribed.” Dr. Fishbein has appealed, and LSU’s Board of Supervisors has answered, requesting that we affirm the trial court’s judgment. For the following reasons, we reverse the trial court’s judgment and render the declaratory relief prayed for by Dr. Fishbein. With respect to the remaining relief requested by Dr. Fishbein, we remand this matter for further proceedings. We also deny LSU’s Board of Supervisor’s answer.
I. FACTUAL AND PROCEDURAL BACKGROUND
Dr. Fishbein, a neonatologist, worked for the Health Sciences Center, and its predecessor, the LSU Medical Center (jointly referenced as “LSU”), from 1970 to 2001. She began her employment with LSU as an instructor of pediatrics. According to Dr. Fishbein’s testimony, her duties as a faculty member of the pediatric department included “major teaching responsibilities for medical students, residents, and others.” She was also responsible for patient care at the hospital and for other administrative matters, which changed over the years. Dr. Fishbein also served as chief of the pediatric department for about nine years.
During 1970, Dr. Fishbein’s salary was comprised of a base salary with no supplemental salary. According to Dr. Fishbein, none of her salary was contingent |4on performing patient care; she received the same salary regardless of the number of patients she treated. When she began receiving a supplemental salary in 1980, it was relatively small compared to her base salary. Over the years, however, both her base and supplemental salaries increased, and by 1994, her supplemental salary comprised a substantial portion of her total salary.
When Dr. Fishbein began working for LSU in 1970, she was a member of LSU’s non-contributory retirement program.[3] In 1979, the LSU system merged into TRSL, which mandated both employer and employee contributions. Pursuant to Louisiana Revised Statutes 11:721, Dr. Fish-beiris participation in that system was mandatory as a condition of her employment. At some point after the merger, she began receiving an annual TRSL contributions report, and no later than 1989, she realized that LSU’s contributions were a percentage of only her base salary rather than of her total salary.
Dr. Fishbein also received TRSL retirement calculations, which reflected that her estimated benefits did not consider her supplemental salary. Upon receiving these calculations, she questioned LSU personnel regarding the practice of reporting and contributing upon only the base salary, and was told, “That’s the way it’s done.” She did not contest the practice because her employment was on a nontenured basis, and due to prior health problems, she believed that if she was required to seek other employment, she might have problems obtaining medical in *61 surance. Dr. Fishbein testified that she did not contact TRSL personnel to | ^challenge the practice. She understood that TRSL calculated benefits based on the contributions and service information provided by LSU.
In 1998, Dr. Fishbein entered the Deferred Retirement Option Plan (“DROP”). Upon doing so, TRSL fixed her retirement benefits without considering her supplemental earnings. Pursuant to a May 8, 2000 letter to LSU and TRSL, Dr. Fish-bein’s counsel requested an adjustment of Dr. Fishbein’s monthly retirement benefit to reflect her total compensation.
With the matter remaining unresolved, Dr. Fishbein filed her petition on August 7, 2000. Both defendants answered the petition, generally denying the requested relief and, within their answers, pleaded the peremptory exception raising the objection of prescription. These exceptions were not disposed of before trial and, thus, were deferred to the merits of the case. Both defendants additionally asserted the affirmative defense of estoppel.
Prior to trial, the parties stipulated that: 1) after entering DROP in 1998, Dr. Fish-bein officially stopped working on April 15, 2001; 2) LSU paid Dr. Fishbein an average of $17,916.05 per month during her highest thirty-six month period prior to her entering DROP; 3) LSU paid Dr. Fishbein one check per month that represented compensation for the work she performed as an LSU employee; 4) LSU reported only Dr. Fishbein’s “base salary” to TRSL; 5) LSU deducted employee retirement contributions based on Dr. Fish-bein’s “base salary” and remitted those amounts to TRSL; and 6) LSU’s statutorily-required employer contribution remitted to TRSL was calculated based on Dr. Fishbein’s “base salary.”
| fiAfter a trial on the merits, the trial court signed a judgment that sustained defendants’ exceptions based on prescription and dismissed Dr. Fishbein’s suit with prejudice. In written reasons for judgment, the trial court found, in pertinent part:
This court rules that the equitable doctrine of estoppel by laches is applicable to the claim of Dr. Fishbein. The court rules that under the doctrine of laches, she had a claim for those wages for a three year period preceding July 1, 1998, when she entered the DROP Program. (La.C.C. Art. 3494). Since Dr. Fishbein was participating in the DROP Program administered by the Teachers’ Retirement System, LSU no longer had an obligation to contribute to the retirement system on her behalf. (La. R.S. 11:787B). Consequently, her claim has prescribed because suit was not filed timely.
Dr. Fishbein has appealed, contending the trial court erred by: 1) failing to find that “earnable compensation,” as defined in Louisiana Revised Statutes 11:701(10), includes supplemental pay; 2) applying the equitable doctrine of estoppel by laches to bar her claims rather than applying the applicable positive law that governs her entitlement to retirement benefits; and 3) finding that her claims have prescribed. LSU’s Board of Supervisors answered the appeal, urging this court to affirm the trial court’s dismissal of Dr. Fishbein’s suit.
II. ANALYSIS
A. Prescription
Dr. Fishbein argues that her causes of action did not accrue until the date of her retirement, and that her actions, being akin to the recovery of pension benefits, are personal actions subject to the ten-year prescriptive period provided by *62 1 ^Louisiana Civil Code Article 3499.[4] Alternatively, she asserts that if her claims are classified as claims for “compensation for services rendered,” they are governed by a three-year prescriptive period under Louisiana Civil Code Article 3494, and they did not accrue until she retired.
Defendants assert that Dr. Fishbein’s causes of action accrued in the mid-1980s when she became aware that LSU failed to contribute to TRSL based upon her supplemental salary. Defendants further assert Dr. Fishbein’s claims have prescribed, specifically contending that Dr. Fishbein’s suit is one to recover damages, and that her claims are subject to the one-year prescriptive period for delictual actions pursuant to Louisiana Civil Code Article 3492. Alternatively, they argue that under either the three-year or the ten-year prescriptive periods, Dr. Fishbein’s claims have prescribed because she filed suit more than ten years after she gained knowledge of LSU’s practice to contribute on solely the base pay.
Under Louisiana law, a cause of action accrues when a party has the right to sue. Falgout v. Dealers Truck Equipment Co., 1998-3150, p. 12 (La.10/19/99), 748 So.2d 399, 407. Our courts have consistently held that a public employee’s right to retirement benefits does not “accrue” or “vest” until eligibility for retirement is attained. Smith v. Board of Trustees of Louisiana State Employees’ Retirement System, 2002-2161, pp. 10-11 (La.6/27/03), 851 So.2d 1100, 1107, cert. denied, 540 U.S. 1179, 124 S.Ct. 1414, 158 L.Ed.2d 81 (2004); Harrison v. Trustees of Louisiana State Employees’ Retirement System, 1995-0048, p. 9 (La.App. 1st Cir.10/6/95), 671 So.2d 385, 391-392. Before the achievement of retirement eligibility, courts have deemed the right inchoate and have found that the legislature can modify the details of a contributory retirement system, such as rate of contribution, benefits, length of service, and age requirements, to the prejudice of the employee. Smith v. Board of Trustees of Louisiana State Employees’ Retirement System, 2002-2161 at p. 11, 851 So.2d at 1107; Harrison v. Trustees of Louisiana State Employees’ Retirement System, 95-0048 at p. 9, 671 So.2d at 392.
In the present case, although Dr. Fish-bein is not seeking to recover retirement benefits, the relief she seeks hinges upon those benefits. Accordingly, her claim for a declaration of rights based on the statutory provisions governing TRSL (specifically that the definition of “earnable compensation” includes supplemental pay) is premature until her right to a retirement benefit “vests” or “accrues.” We likewise conclude that a claim for injunctive relief ordering LSU to contribute funds based on the statutory provisions governing TRSL is premature until the member’s right to receive a retirement benefit “vests” or “accrues.”[5] The collection of *63 employers’ contributions is based on the “eaxnable compensation” of members. La. R.S. 11:885. Consequently, to determine whether Dr. Fishbein is |9entitled to the injunctive relief requested requires determining whether “earnable compensation,” as addressed in Louisiana Revised Statutes 11:701 includes supplemental pay.
The courts are to strictly construe prescription statutes in favor of maintaining rather than barring actions. Hudson v. East Baton Rouge Parish School Bd., 2002-0987, p. 6 (La.App. 1st Cir.3/28/03), 844 So.2d 282, 287. In addition, laws relating to prescription cannot be extended by analogy from one subject to another. Devillier v. City of Opelousas, 247 So.2d 412, 417 (La.App. 3d Cir.1971). The type or character of the action must first be determined in order to assess what prescriptive period is applicable to a particular action. Stams v. Emmons, 538 So.2d 275, 277 (La.1989); Scott v. Sears, Roebuck and Co., 1999-0571, p. 4 (La.App. 1st Cir.12/22/00), 778 So.2d 50, 53.
Dr. Fishbein seeks a declaration of her rights regarding her retirement benefits and mandamus relief (which we classify as a prayer for injunctive relief, see footnote 5, supra) that orders the payment of retirement contributions and benefits in accordance with state law. Vested retirement rights are the basis for Dr. Fish-bein’s claims, and her membership in TRSL expressly creates a “contractual relationship between employee and employer .... ” See Louisiana Constitution Article X § 29(B) and Smith v. Board of Trustees of Louisiana State Employees’ Retirement System, 2002-2161 at p. 12, 851 So.2d at 1108. She does not seek recovery of damages for personal injury or property damage. Thus, Louisiana Civil Code article 3492, which governs delictual actions, does not govern her claims, which sound in contract rather than in tort.
ImNext we consider whether Dr. Fishbein’s claims are governed by Louisiana Civil Code Article 3494. Again, we highlight that Dr. Fishbein seeks declaratory relief regarding the calculation of her retirement benefits and injunctive relief regarding LSU’s statutory obligation to deduct and transmit employer contributions to TRSL (see Louisiana Revised Statutes 11:885); Dr. Fishbein does not seek to recover monetary sums from her employer.[6] Thus, due to the constraints of *64 the strict construction rules applicable to prescription statutes, we determine that Dr. Fishbeiris action is not “an action for the recovery of compensation for services rendered” within the meaning of Louisiana Civil Code article 3494, and is thus not subject to the three-year prescriptive period. (Emphasis added.) Accordingly, Louisiana Civil Code Article 3499, which provides that a personal action is subject to a ten-year liberative prescriptive period unless otherwise provided by legislation, governs her claims. As determined above, this ten-year prescriptive period did not begin to run until Dr. Fishbein became eligible to retire.
InLouisiana Revised Statutes 11:761 addresses retirement eligibility requirements and provides in pertinent part:
A. (1) Any person who became a member prior to July 1,1999, may retire upon written application to [TRSL’s Board of Trustees], if at the time of application the member:
(a) Has attained the age of sixty years; and
(b) Has credit for five years of accredited service or has twenty years or more of creditable teaching service regardless of age.
(Emphasis added.)
The record establishes that Dr. Fishbein’s date of birth is June 27, 1943. During her employment with LSU, she had not attained the age of sixty years. Her employment with LSU began on August 15, 1970, and she became a member of the TRSL during 1979. Thus, as of August 15, 1990, when Dr. Fishbein had twenty years of creditable teaching service, she was eligible to retire and her causes of action had accrued. Because she filed suit on August 7, 2000, she timely filed her claims within ten years of their accrual. Thus, we reverse the trial court’s judgment, which sustained the defendants’ exceptions raising the objection of prescription.
B. Estoppel
Defendants urge that the doctrine of estoppel by laches bars Dr. Fishbein’s claims. They argue she unreasonably delayed the filing of her claims and if her claims are ultimately successful, LSU’s fiscal affairs will be substantially prejudiced. Dr. Fishbein contends the doctrine of es-toppel by laches is inapplicable due to the existence of positive law governing her entitlement to retirement benefits.
11?.The purpose of the equitable doctrine of laches is to bar a litigant’s stale claims that would cause injustice if pursued. American Greetings v. Manuel, 602 So.2d 160, 162 (La.App. 3d Cir.1992). Generally, in order to invoke this doctrine, a defendant must prove: 1) unreasonable delay by the plaintiff in presenting his claim, and 2) substantial prejudice to or upset of the public body’s fiscal affairs. Bradford v. City of Shreveport, 305 So.2d 487, 494 (La.1974). The mere lapse of time is insufficient to invoke the doctrine of laches. Miller v. East Ascension Tel. Co., Inc., 331 So.2d 182, 186 (La.App. 1st Cir.1976). ■
However, the doctrine of laches appears to be one of last resort, as it is a doctrine based on equity. Under the laws of this state, courts apply equitable principles where they cannot derive express laws from legislation or custom. La. C.C. art. 4; See Succession of Picard, 238 La. 455, 463, 115 So.2d 817, 820 (1959) and Bourgeois v. Dunn, 2001-1185 (La.App. 1st Cir.6/21/02), 822 So.2d 708, 710. Accordingly, where equitable considerations and estoppel principles conflict with positive written law, the positive law prevails. Palermo Land Co., Inc. v. Planning *65 Com’n of Calcasieu Parish, 561 So.2d 482, 488 (La.1990).
Louisiana Revised Statutes 11:768A establishes the retirement allowance that Dr. Fishbein is entitled to receive. It provides, in pertinent part:
1) Upon service retirement, a person who became a member prior to July 1, 1999, who retires on or after July 1, 1997, shall receive an annual benefit which provides a total allowance equal to two percent of his average earnable compensation multiplied by the number of years of creditable service, plus the sum of three hundred dollars. The referenced additional sum of three hundred dollars shall only be applicable with respect to persons becoming members pri- or to July 1,1986.
]13(2) Notwithstanding the provisions of Paragraph (1) of this Subsection, any member who retires on or after July 1, 1997, who became a member prior to July 1, 1999, and who has attained the age of sixty-five years and has credit for at least twenty years of creditable service, exclusive of military service, unused accumulated sick leave and unused accumulated annual leave, or any of these, or who has attained the age of fifty-five years and has credit for at least twenty-five years of creditable service, exclusive of unused accumulated sick leave and unused accumulated annual leave, or who has credit for at least thirty years of creditable service at any age, exclusive of unused accumulated sick leave and unused accumulated annual leave, shall receive an annual benefit which provides an allowance equal to two and one-half percent of his average earnable compensation, multiplied by the number of years of creditable service, plus a sum of three hundred dollars. The referenced additional sum of three hundred dollars shall only be applicable with respect to persons becoming members prior to July 1,1986.
(Emphasis added.)
Additionally, as theorized above, Louisiana Civil Code Article 3499 governs whether Dr. Fishbein’s personal claims for declaratory and injunctive relief have been timely filed. Accordingly, since Louisiana Revised Statutes 11:768 and Louisiana Civil Code Article 3499 constitute positive written law, it is not necessary to resort to equity to determine whether Dr. Fishbein should be allowed to pursue these claims. Rather, these statutory provisions govern and establish the timeliness of her claims.
Moreover, if we were to apply the doctrine of laches, we would conclude that defendants have not established: 1) Dr. Fishbein unreasonably delayed in presenting her claims, and 2) a decision in Dr. Fishbein’s favor would substantially prejudice LSU or upset its fiscal affairs. Although Dr. Fishbein was aware that LSU was not making retirement contributions based upon her supplemental salary as early as 1989, she explained that until 1994, her supplemental salary was a relatively small percentage of her total salary. After receiving a substantial raise |um 1994, her supplemental salary was significantly greater than her base salary. At that juncture, however, she was concerned about challenging LSU’s practice of contributing on solely the base salary. She explained that her employment with LSU was not tenured, and she was concerned that LSU would terminate her employment if she challenged its practice. Dr. Fishbein also testified that she had experienced major health problems and greatly relied on the health insurance benefits associated with her employment. Based on these circumstances, we would not find that Dr. Fishbein’s action of bringing her suit within the prescriptive period provided by law was an unreasonable delay.
*66 Additionally, defendants did not establish substantial prejudice to its fiscal affairs. Robert Plaisance, the Assistant Vice-President of Medical Fiscal Policy for the LSU System Office, testified that he was primarily responsible for the Health Sciences Center’s fiscal budget. Plaisance stated, “[F]or all practical purposes, university funds are expended on an annual basis.” He explained that the budget for the Health Science Center was “fairly well fixed” during each fiscal period and that the budget for retirement contributions was based upon only the base salary. Although he explained that small amounts of “extra” money are occasionally placed into reserve, he testified that generally, the operating revenues are used to support the operating expenditures. He further testified that if LSU were required to contribute its employer’s share for Dr. Fishbein’s previously earned supplemental pay, it would have an impact on LSU’s current budget. He explained those funds would have to come out of the current budget or future budgets of LSU’s School of Medicine.
| ^Although this testimony establishes that payment of a contribution based on Dr. Fishbein’s supplemental pay would have an adverse impact on LSU’s budget, it does not establish that payment of such a contribution would substantially prejudice or upset its fiscal affairs. To the contrary, Plaisance’s testimony appears to establish that the additional contributions could be absorbed by current or future budgets.[7]
C. Earnable Compensation
Louisiana Revised Statutes 11:701(10) defines “Earnable compensation” as:
[T]he compensation earned by a member during the full normal working time as a teacher. Earnable compensation shall not include per diem, post allowances, payment in kind, hazardous duty pay, or any other allowance for expense authorized and incurred as an incident to employment, nor payments in lieu of unused sick or annual leave, nor retroactive salary increases unless such increase was granted by legislative act or by a city/parish systemwide salary increase, nor payment for discontinuation of contractual services, unless the payment is made on a monthly basis. If a member is granted an official leave and he makes contributions for the period of leave, “earnable compensation” shall not include compensation paid for other employment which would not have been possible without the leave. The board of trustees shall determine whether or not any other payments are to be classified as earnable compensation.
Dr. Fishbein contends that her supplemental salary was part of her regular compensation that she earned for her full-time teaching work while a member of TRSL. Because Louisiana Revised Statutes 11:701(10) does not expressly exclude supplemental pay from the definition of “earn-able compensation,” she |1fiargues that her supplemental pay should be included based upon general statutory construction principles. Additionally, Dr. Fishbein urges *67 that LSU’s customary practice of excluding supplemental pay is arbitrary and in clear derogation of Louisiana Revised Statutes 11:701(10).
LSU replies that Dr. Fishbein’s teaching role is not a “traditional” one and, as such, “very little of her compensation would arguably be earnable.” LSU concedes that the list of exceptions and exclusions contained within Louisiana Revised Statutes 11:701(10) does not encompass supplemental pay. It argues, however, that the lack of an express exclusion is not dispositive. It suggests that the list of exclusions demonstrates that the legislature did not intend that all compensation would be included when calculating retirement benefits.
LSU attempts to bolster its argument by referencing its long-standing practice of excluding supplemental income from retirement calculations and TRSL’s continuation of that practice after the merger of the two retirement systems. LSU argues that the record amply supports the validity of its practice. Plaisance testified that LSU historically had not considered supplemental pay in calculating retirement contributions; he explained that LSU’s practice went back at least as long as he had been affiliated with the Health Science Center, which was since 1977. Dr. Carlton Page, the Treasurer of TRSL from 1974 to 1990, further testified that since the creation of the LSU-funded retirement system, no individual has retired from LSU or TRSL with benefits based upon a supplemental salary. He explained that these retirement systems have excluded from retirement calculations such items as extra pay, supplemental pay, and differential pay. Gerald Juneau, former retirement coordinator for the LSU-funded retirement |17system and deputy secretary/treasurer of TRSL after the systems’ merger, testified that LSU’s practice of contributing on the base salary only was a system-wide practice for the LSU system both prior to and after the merger. He stated that when he testified before the house and senate retirement committee regarding the merger bill, he informed the committee that this had been LSU’s practice and that the merger bill continued this practice.
“The sources of law are legislation and custom.” La. C.C. art 1. In Louisiana, as in all codified systems, legislation is the superior source of law. La. C.C. art. 1, cmts. (a) and (c). Custom results from practice repeated for a long time and generally accepted as having acquired the force of law. La. C.C. art. 3. However, custom may not abrogate legislation. Id.; Gallo v. Gallo, 2003-0794, p. 6 (La.12/3/03), 861 So.2d 168, 173. Accordingly, although the historical practices of the retirement systems became the customs of these retirement systems, they are not significant, as they cannot override positive law. Accordingly, we conclude that resolution of this case hinges solely on the meaning of Louisiana Revised Statutes 11:701(10).
Louisiana Civil Code article 9 states, “When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.” Louisiana Revised Statutes 1:4 states, “When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” Accordingly, where the law is clear and unambiguous, the courts should make every effort to apply the law as enacted.
11sWhen the language of the law is susceptible of different meanings, the courts must interpret the laws as having the meaning that best conforms to the purpose of the law. La. C.C. art. 10. The courts *68 must give the words of a law their generally prevailing meaning. La. C.C. art. 11. When the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. La. C.C. art. 12.
With regard to the interpretation of pension statutes, Louisiana courts have consistently held that they must be liberally construed in favor of the intended beneficiaries. Harrison v. Trustees of Louisiana State Employees’ Retirement System, 95-0048 at p. 7, 671 So.2d at 390. Denial of retirement benefits is not favored whenever there exists an otherwise reasonable construction. Id. Accordingly, any ambiguity in such a statute must be resolved in favor of the retiree. Id.
In the present case, Dr. Fish-bein’s teaching role was admittedly not a traditional one, but her job duties involved teaching within the context of providing care to hospital patients. Thus, liberally construing the language of Louisiana Revised Statutes 11:701(10), we conclude that Dr. Fishbein’s supplemental pay was “compensation earned by a member during the full normal working time as a teacher.”
Despite Dr. Fishbein’s non-traditional teaching post, she did not have the option of declining to participate in the TRSL system.[8] Although LSU paid her both a base and supplemental salary during many years of her employment, this | ^differentiation in her salary did not correspond to any breakdown in her teaching versus patient care responsibilities. Dr. Fishbein testified that none of her salary was contingent on performing patient care; she received her salary regardless of how many patients she treated.
Plaisance’s testimony addressed the difference between base and supplemental pay. Plaisance testified that the base salary is tied to academic rank, years of service, and the educational degree of the employee. He explained that LSU paid similar base salaries to those faculty members with similar academic rank and similar professional credentials. He further explained that LSU utilized supplemental salaries to take into consideration various market factors and whether an employee took on additional duties or responsibilities. By providing both base and supplemental pay, LSU provided an acceptable gross level of compensation. Stan Tefft, assistant personnel director of the Health Sciences Center, described the supplemental pay as “additional compensation based on a faculty member’s additional earnings, usually through either a contract or private patient income.” Tefft further described that the supplemental pay was not a bonus but rather was part of Dr. Fish-bein’s salary. This testimony further supports our conclusion that supplemental pay constitutes “compensation earned by a member during the full normal working time as a teacher” within the meaning of Louisiana Revised Statutes 11:701.
We further conclude that supplemental pay is not encompassed within the second sentence of Louisiana Revised Statutes 11:701 that excludes various types of pay. As defendants acknowledge, it is not expressly included in the listed items and we do not find it sufficiently analogous to any of the listed items to warrant its | ^exclusion. In addition, as stated above, the fact that neither LSU nor TRSL has ever included such pay in their retirement calculations is not dispositive of how this court should interpret the statute. LSU *69 refers to Juneau’s testimony regarding LSU’s practice of contributing on solely base pay and the fact that he presented such testimony to the legislative committee considering the systems’ merger. We find, however, that because the legislature’s response was to draft legislation that did not expressly exclude supplemental pay from the definition of “earnable compensation,” this testimony is largely irrelevant. The legislature was aware of the different categories of supplemental and base pay but chose not to differentiate between them. This demonstrates the intent to encompass supplemental pay within the definition of “earnable compensation.”
The last sentence of Louisiana Revised Statutes 11:701(10) provides that TRSL’s Board of Trustees “shall determine whether or not any other payments are to be classified as earnable compensation.” (Emphasis added.) Pursuant to this language, the legislature has directed that TRSL’s Board of Trustees shall determine whether compensation other than that “earned by a member during the full normal working time as a teacher” shall be considered as “earned compensation.” Since we have determined that “supplemental pay” is such compensation that is “earned by a member during the full normal working time as a teacher,” TRSL’s Board of Trustees does not need to make any further determination.[9]
181Based on our determination that the supplemental pay earned by Dr. Fishbein is “earnable compensation” within the meaning of Louisiana Revised Statutes 11:701, we find that Dr. Fishbein is entitled to declaratory and injunctive relief. Accordingly, we declare that the supplemental pay Dr. Fishbein earned during her employment with LSU is part of the “average earnable compensation” upon which her retirement benefits are to be calculated pursuant to Louisiana Revised Statutes 11:768.
We next address Dr. Fishbein’s claim for mandatory injunctive relief concerning LSU’s payment of employer contributions and the certification of her salary. Louisiana Revised Statutes 11:888 governs the submission of corrected contributions reports, addresses employer liability for erroneous information, and dictates when a purchase of service credit is required as follows, in pertinent part:
A. Each employer shall transmit, monthly, a contributions report setting forth necessary salary and deduction information, provided that [TRSL’s] board of trustees may, in its discretion, extend the time for submission.
[[Image here]]
C. (1) If any reporting agency submits a contributions report which is in error as to the earnings or salary of a member or the amount of time worked by a member and such error results in the member receiving less service credit or paying less employee contributions, said error may be corrected by the reporting agency for a period of up to three years after the contributions report was due the retirement system by the payment of the correct employee and employer contributions plus legal interest compounded annually from the date of error. (2) Any corrections as to earnings or salary made more than three years after a contributions report is due the retirement system shall be a purchase of service credit under the provisions of R.S. 11:158. The employer institution, in its discretion, may pay not more than fifty percent of the purchase price. However, if it makes such payment, it *70 shall then make such payment, in the same percentage, with respect to all other purchases under this Paragraph, provided, | ¡^however, that if the error is the total fault of the employer, the employer shall pay the total purchase cost.
(Emphasis added.)
Accordingly, because Dr. Fishbein is seeking the correction of contributions reports that were due more than three years ago,[10] the correction as to her earnings | ^constitutes a “purchase of service credit” governed by Louisiana Revised Statutes 11:158, which provides in part:
A. (1) Effective July 1, 1986, the provisions of this Section shall govern the payment required with respect to the otherwise authorized purchase of service credit in the public retirement or pen *71 sion systems, funds, and plans referenced in Subsection B of this Section.
[[Image here]]
B. The provisions of this Section are applicable to the following public retirement or pension systems, funds, and plans:
[[Image here]]
(13) Teachers’ Retirement System of Louisiana.
C. (1) In order for a purchase of service credit, which is otherwise authorized, to be effective, there shall be paid into the applicable retirement or pension system, fund, or plan the greater of either:
(a) An amount which, on an actuarial basis, totally offsets the increase in accrued liability of the system resulting from the purchase of the credit.
124(b) The employee and employer contributions that would have been paid to the applicable system, fund, or plan, plus interest thereon, compounded annually from the time the contributions would have been paid, at the assumed actuarial valuation rate of interest of the system, fund, or plan in which the credit is being purchased.
While this statutory provision specifies that the retirement system must receive a specified payment before the service-credit purchase is effective, it does not specify who in each instance is to make the payment. Louisiana Revised Statutes 11:888 provides, however, that “if the error is the total fault of the employer, the employer shall pay the total purchase cost.” Based on the facts of the present case, we conclude that the error in the contributions reports resulted totally from LSU’s fault. However, Dr. Fishbein testified that because she received the percentage of her supplemental salary that LSU should have remitted to TRSL, she is willing to fund her employee portion of the contribution, plus a supplemental payment to fund TRSL’s actuarial cost of the increased benefits. Accordingly, based on these special circumstances, we conclude it is not appropriate to assess the total purchase cost to LSU. Rather, we find it appropriate to order LSU to pay TRSL the employer’s contributions that would have been paid to TRSL based on the supplemental salary earned by Dr. Fish-bein during her service years, along with the greater of: 1) a proportionate share of a supplemental contribution to fund the actuarial cost of the increased benefits to be paid by TRSL (such share being based on a pro rata assessment of the contributions that would have been made by both LSU and Dr. Fishbein if supplemental earnings had been included in contributions to TRSL), or b) interest on the employer contribution that would have been paid to TRSL for the supplemental salary, compounded ^annually from the time the contributions would have been paid, at the assumed actuarial valuation rate of interest of the TRSL system.
Charles Hall, who serves as the TRSL actuary, testified that one of his job functions is to ensure that employers contribute sufficient funds to cover members’ benefit costs. He explained that member and employer contributions are determined on an annual basis.[11] The employee contribution is a set percentage of the member’s earnable compensation, and each year the employer’s contribution rate is set based upon an actuarial evaluation that determines the amount needed to fund the system’s liabilities.
*72 Pursuant to his deposition testimony, Hall explained that TRSL had contacted him, requesting a determination of the cost to fund the additional liability that would result if TRSL calculated Dr. Fishbein’s retirement allowance based upon both her base and supplemental pay. Responding to this request, Hall determined that Dr. Fishbein would have additionally contributed $98,312, if she had paid contributions based on her supplemental pay. Hall explained that if TRSL had treated this amount as delinquent employee contributions, it would have charged interest on it, and the total due from Dr. Fishbein would have been $178,052. Hall explained, however, that the accumulated contributions plus interest do not represent the cost to TRSL at this time. Rather the cost must be determined on an actuarial basis. Hall determined that, as of April 15, 2002, upon considering the differential of the accumulated DROP balance and the increase in I gfithe monthly annuity, the total additional cost to TRSL would be $237,401.[12] However, Hall did not determine what portion of that figure corresponds to the amount that Dr. Fishbein would have paid through member contributions or the amount that LSU would have paid through employer contributions.[13] In pertinent part, Hall testified regarding his actuarial calculations and stated, “I cannot say that of the $237,401 due [TRSL] that I could directly calculate an employee portion that came out to $98,000 or the $178,000 because that’s not how the system works.”
Because Hall’s actuarial calculations included additional DROP benefits that Dr. Fishbein does not seek and because Hall did not determine a basis upon which to determine the respective portions of the obligation due from LSU and Dr. Fishbein, it is necessary to remand this matter. Accordingly, we hereby remand with instructions to the trial court to allow the parties to introduce additional evidence establishing the figures addressed in Louisiana Revised Statutes 11:158C(1) so that the cost of Dr. Fishbein’s “purchase of service credit” can be determined. Additionally, once that cost is established (i.e., the greater of the figures referenced in Louisiana Revised Statutes ll:158C(l)(a) and (b)), the trial court is directed to further allow the parties to introduce evidence regarding the amount of contributions that would have been made by LSU if it had historically contributed to TRSL based on supplemental earnings. Based on a pro rata | ^assessment of the contributions that LSU and Dr. Fishbein would have made, the trial court is to assign a percentage factor to each party. Thereafter, the trial court is further directed to order LSU’s Board of Supervisors to: 1) send its respective percentage of the total cost of the “purchase of service credit” pertaining to Dr. Fishbein’s supplemental salary to TRSL, and 2) submit a corrected contributions report to TRSL, that certifies the amount of Dr. Fishbein’s total earnings, including both her base and supplemental salaries for all pertinent service years.
We further direct the trial court to render judgment directing TRSL’s Board of Trustees to: 1) receive payment of the funds addressed above from LSU’s Board of Supervisors; and 2) receive payment of *73 the funds addressed above from Dr. Fish-bein; and 3) recalculate Dr. Fishbein’s retirement allowance pursuant to Louisiana Revised Statutes 11:768 based upon the average earnable compensation as resubmitted by LSU’s Board of Supervisors
For these reasons, we deny LSU’s Board of Supervisor’s answer, which requested that we affirm the trial court’s judgment in its answer.
III. CONCLUSION
For these reasons, we reverse the trial court’s judgment and render judgment declaring that Dr. Fishbein’s supplemental pay earned during her LSU employment is part of the “average earnable compensation” upon which her retirement benefits are to be calculated pursuant to Louisiana Revised Statutes 11:768. We also remand this matter for further proceedings consistent with this opinion pertaining | asto the injunctive relief to which Dr. Fishbein is entitled. We hereby assess appeal costs in the amount of $2,055.21 against LSU’s Board of Supervisors.
REVERSED, RENDERED IN PART, AND REMANDED; ANSWER DENIED.
GUIDRY, J., concurs in the result.
McDONALD, J., concurs with reasons.

. Dr. Fishbein also initially sought a declaration that her supplemental pay would be included as part of her "average earnable compensation” for purposes of calculating her Deferred Retirement Option Plan ("DROP”) benefits, but at oral arguments before this court, her counsel represented that she does not seek additional DROP benefits.

. Although Dr. Fishbein proceeded to trial in her individual capacity, she initially sought *60 class certification of "persons employed now or formerly employed by [the Health Sciences Center] who were or are eligible for and participated in [TRSL] ... who are and/or were paid both a base salary and supplemental compensation, and other earned compensation.”

. Before 1979, Dr. Fishbein was a member of LSU's non-contributory retirement system, to which she made no employee contributions. LSU contributed into this system based upon Fishbein's total salary, which did not include a supplemental salary. Accordingly, Fish-beiris claim against the Board of Supervisors does not challenge the amount of employer contributions paid into the LSU system.

. In support of her claim, Dr. Fishbein cites Foti v. Board of Trustees of Fireman's Pension and Relief Fund for the City of Kenner, 2001-1324 (La.App. 5th Cir.4/10/02), 817 So.2d 233, 235, and Mastio v. Firefighters’ Pension & Relief Fund for the City of New Orleans, 1993-1881, p. 8 (La.App. 4th Cir.5/26/94), 637 So.2d 1262, 1266, wiit denied, 1994-1676 (La.10/7/94), 644 So.2d 638. We note these cases involved claims for the recovery of disability pension benefits rather than claims regarding the payment of contributions into the respective retirement systems.

. Technically, Dr. Fishbein seeks a writ of mandamus but we consider her claim as one for mandatory injunctive relief. Dr. Fishbein is able to obtain relief by ordinary means and because she has proceeded via ordinary proceedings, voluntarily cumulating her claim for a writ of mandamus (triable by summary procedure) with her prayer for declaratory relief (triable by ordinary procedure), the delay in *63 volved in obtaining ordinary relief will not cause injustice. La. C.C.P. arts. 1592 and 3862; Fire Protection Dist. Six v. City of Baton Rouge Dept of Public Works, 2003-1205, p. 3 (La.App. 1st Cir. 12/31/03), 868 So.2d 770, 772, writ denied, 2004-0299 (La.4/8/04), 870 So.2d 270. As such, she is not entitled to mandamus relief.

. We note that in Cliburn v. Police Jury Ass’n, 1999-2191, p. 12 (La.App. 1st Cir. 11/3/00), 770 So.2d 899, 907, this court held that Louisiana Civil Code article 3494 was applicable to plaintiff’s claim for “payment of past due wages” brought against the Police Jury Association of Louisiana, Inc. Therein, plaintiff alleged that he was wrongfully denied membership in the Parochial Employees’ Retirement System (“PERS”) and sought recovery of amounts that would have been contributed to PERS by the Police Jury on his behalf if he had been allowed to participate in PERS. Among other relief requested, plaintiff sought a refund of "retirement benefits.” Louisiana Revised Statutes 1L1935A, governing the return of accumulated contributions for "a member not eligible to retire,” provides that a member that ceases to be an employee "shall be paid the amount of his accumulated contributions upon demand.” In awarding a return of "accumulated contributions” in the amount of $16,546.40, this court found that plaintiff’s claim for "what he alleges are past due wages ... [fell] within the purview of "compensation for services rendered.” The Clibum holding is not applicable to the present case; this case is factually distinguishable because Dr. Fishbein does not seek recovery of retirement benefits or a return of retirement contributions.

. The trial court stated in oral reasons that the equitable doctrine of estoppel by laches was applicable. The trial court, however, addressed the timeliness of Dr. Fishbein's claims without making express findings regarding whether defendants established that Dr. Fishbein had unreasonably delayed in presenting her claim, or that substantial prejudice to the public body's fiscal affairs would result if Dr. Fishbein was allowed to pursue her claim. It is also not apparent that the trial court implicitly made these findings. However, if the trial court found that defendants established this dual burden, we conclude the record does not support the trial court's findings and they are manifestly erroneous.

. Louisiana Revised Statutes 11:721 provides, "All teachers shall become members of this system as a condition of their employment."

. We additionally point out, however, that the record establishes that the Board of Trustees has not addressed the issue of classification of supplemental pay.

. Louisiana Revised Statutes 11:884, addressing collection of members’ contributions, currently provides in part:
A. The collection of members’ contributions shall be as follows:
(1) Each employer shall cause to be deducted on each and every payroll of a member eight percent of the earnable compensation of such member; provided, however, that in the event the employer’s contribution to the retirement system as approved, funded, and appropriated by the legislature is less than eleven and eight-tenths percent of the total earnable compensation of each member, each employer shall cause to be deducted on each and every payroll of a member seven percent of the earnable compensation of such member.
(2) The treasurer of each employer shall make the deduction provided above and shall transmit on or before the tenth day of each month to the secretary-treasurer of the board of trustees the sum of such deductions made during the preceding month. Louisiana Revised Statutes 11:885, addressing collection of employers' contributions, presently states, in part:
The collection of employers' contributions on the earnable compensation of members shall be made as follows:
(1) The board of trustees shall certify to the State Department of Education, the Board of Elementary and Secondary Education, or its successors, the state treasurer, and all employers the contribution rate to be paid as employers' contributions.
[[Image here]]
(4)At the beginning of each school year, not later than September first of each year, the State Board of Education, or its successors, and the Board of Supervisors of Louisiana State University and Agricultural and Mechanical College shall certify to the state treasurer the monthly amount due by each college or university under its jurisdiction as the employer contribution at the rate determined and certified in Paragraph (1) of this Section to the retirement system based on the total earnable compensation from state funds of each member of the system in the employ of the college or university. The state treasurer shall deduct from the state funds due each college or university monthly the employer contribution for each college or university and shall remit this amount directly to the secretary-treasurer of the board of trustees within five working days of the first of each month.
(5) The treasurer of each employer ... shall transmit on or before the tenth day of each month to the secretary-treasurer of the board of trustees employers contributions on the earnable compensation of members for the preceding month at the rate determined and certified above.
(6) Each employer shall submit to the board of trustees at the close of each fiscal year, a check list of all members in its employ during that fiscal year showing each member's earnable compensation for that year. Adjustments shall be made at this time for under or over remittance of employers contributions, if any. Such adjustments shall take into consideration the amount of taxes received from the sheriff and ex officio tax collector of the particular parish under the provisions of R.S. 11:875(4).
(7) All employers must pay the entire amount of the required employer contribution.
Additionally, Louisiana Revised Statutes 11:787A provides that during participation in DROP, "although the member shall remain a member of [TRSL], neither regular member nor employer contributions to the regular plan shall be payable.” Thus, LSU ceased malting member and employer contributions to TRSL upon Dr. Fishbein's entry into DROP on July 1, 1998.

. Louisiana Revised Statutes 11:884 and 11:885, quoted above herein, govern the contributions of members and employers, respectively.

. As indicated earlier, Dr. Fishbein does not seek additional DROP benefits. Thus, final determinations cannot be based upon this figure because it includes an additional lump sum of $44,000 in benefits that Dr. Fishbein would have been entitled to if supplemental pay had been included in her retirement benefits calculation and credited to her DROP account.

. We also note that Hall did not quantify the amount that LSU would have contributed had it made employer contributions based upon Dr. Fishbein’s supplemental pay.